Cornish vs. Frees and others.

CORNISH, Appellant, vs. FREES and others, Respondents.

*September 25 — October 15, 1889.*

*Mortgages: Cloud upon title: Subsequently acquired title: Homestead.*

1. A mortgage of land given by one who has no title, or a foreclosure sale thereunder, is not even an apparent cloud upon the real title.
2. Where the mortgagor had no title at the time of giving a mortgage to secure the payment of a certain sum upon condition that the mortgagee should procure for him a good title, such mortgage, though containing no covenants of warranty, embraces the title so procured for the mortgagor subsequent to its execution, and is in effect a purchase money mortgage.
3. A homestead cannot be jointly held with another person.

APPEAL from the Circuit Court for *Winnebago* County.

Action to foreclose a mortgage. The principal facts are stated in the opinion. The mortgage in suit contained no express covenants. The plaintiff appeals from a judgment dismissing the complaint.

*F. W. Houghton*, for the appellant.

For the respondents there was a brief by *Gabe Bouck & George Hilton*, and oral argument by *Mr. Bouck*.

ORTON, J. This action is to foreclose a mortgage upon the S. W. ¼ of the S. W. ¼ of section 16, township 17, range 15 E., in Winnebago county, Wis., executed by the defendant *R. W. Frees* to one Angel B. Frees, on the 17th day of June, 1869, to secure the payment of the sum of $400, $200 of which was to be paid December 1, 1872, and $200, December 1, 1873, without interest, of which the plaintiff has become the owner. The following are substantially the facts:

A. B. Frees, the father, entered into possession of said premises in 1852. Alpheus O. Frees, his son, became the owner of the same by patent from the state in May, 1852. A. B. Frees died in 1868, and by his will devised the premises to his widow for life, and on her death to his two sons, *R. W. Frees* and Angel B. Frees. *R. W. Frees* went into possession under his mother, and an agreement with Angel B. that he would support her during life, executed at the same time of the mortgage in suit. At the same date, Angel B. Frees quitclaimed his interest in the premises to *R. W. Frees*, and surrendered to him his interest in certain personal property, as the consideration for the payment of said $400 and the mortgage in suit to secure the same. In said agreement it was further provided that said mortgage moneys should be paid *only on condition* that the said Angel B. Frees secure "a good and perfect title to the said land" on or before the 1st day of December, 1872. To carry out this agreement, Angel B. Frees procured the said Alpheus O. Frees to convey said land to the said *R. W. Frees* on the 27th day of April, 1871, and the deed was recorded June 5, 1871. Angel B. Frees caused said mortgage to be recorded May 8, 1871; and in February, 1887, the said

*R. W. Frees* caused said quitclaim deed from Angel B. Frees to be recorded. The effect of the agreement was such that if the title was not so perfected by December 1, 1872, the money was not to be paid, and the deed and mortgage were to be void and of no effect.

So far, there is no trouble with the case. The title was perfected in time, and the mortgage took effect. But, in 1854, A. B. Frees, the father, and his wife, mortgaged the premises to a railroad company, and that mortgage was foreclosed in 1871, and the premises sold to one I. R. Ficklin, and deeded to him in January, 1872. The material defense is that the title has not been made good and perfect by removing this apparent cloud upon it. Another defense is that the premises at the time of the execution of the mortgage in suit were, and still are, the homestead of the defendant *R. W. Frees*, he being at the time the husband of the defendant *Clara J. Frees*, who together lived upon and occupied the same as their homestead.

The circuit court found that the said Angel B. Frees did not and has not secured to the said *R. W. Frees* a good and perfect title to said land, and that he is not, therefore, in default on said mortgage, and there is nothing due or unpaid thereon, and that said premises were and are the homestead of the said *R. W.* and *Clara J. Frees*, and dismissed the complaint.

We think the circuit court erred in both of these findings.

*First.* The quitclaim deed, the agreement, and the mortgage were one transaction, and are all equally affected by the condition, and became inoperative and of no effect on failure to perform it. The interest of Angel B. Frees in the personal property of the estate of his father also passed to *R. W. Frees*, by the agreement, as part of the consideration of the mortgage. (1) We do not think it was contemplated or within the intention of the parties by the condition, that any pretended cloud or incumbrance by reason of the

railroad mortgage should be removed in order to perfect the title in *R. W. Frees.* That mortgage was given in 1854, for $300, payable in ten years, at eight per cent. interest; and in 1869, the date of this transaction, there appears to have been due thereon at least over $600. The condition of the title and this mortgage were well known to both of the parties alike. If it was contemplated that Angel B. Frees should pay and satisfy this mortgage, then, for his interest in the estate of his father, both real and personal, he is to receive the $400 secured by the mortgage, and the benefit of being relieved from one half of the expense of supporting his mother, on his purchasing or procuring the fee-simple title of the land held by A. O. Frees, and paying or satisfying the railroad mortgage of nearly twice as much in amount as the mortgage he was receiving. Such a construction of the condition would be most unreasonable and oppressive. (2) *R. W. Frees* was in possession of the premises, under and with his mother, and in the enjoyment of all the estate his father had in it, and of the personal property used on it, and knew what the estate was in every respect. By his father's will he held one half of the land by such title as his father had, subject to the railroad mortgage, one half of which he was bound to pay as an incumbrance on his own interest; and he and his brother Angel B. Frees, in this respect, were on even terms. He obtained from Angel B. his half interest by quitclaim deed. That interest was all that he could have supposed he was receiving by his quitclaim deed. That was all he purchased, and he received it, and he continued in the uninterrupted enjoyment of it. Can it be possible that by the condition he was to receive any better title than he already had, excepting the fee-simple title held by A. O. Frees? (3) They both knew that their father held no title whatever when he gave the mortgage, and that the mortgage was void. Therefore the condition could not have been made with

reference to it. They both had the same means of getting rid of it, or of having it set aside as a cloud upon the title, if it amounted to that. He had reason to expect that, by force of the condition, he would obtain the fee-simple title of A. O. Frees, and then, he being in possession under it, he would be the only party to take the proper means to get rid of this void mortgage. Angel B. was left without either title or possession. (4) *R. W. Frees* appeared to be satisfied with the title after the deed from A. O. Frees, and he then for the first time put his quitclaim deed on record, and has rested quietly until this suit was brought. In the suit to foreclose the railroad mortgage, the said *R. W. Frees* appeared, and answered under oath, alleging that he held a perfect title in fee-simple to the land, under a deed from the patentee thereof (A. O. Frees), and that it was not subject to the mortgage. (5) The circumstances at the time, and the subsequent conduct of the parties in relation to the transaction, show very clearly that the removal of this pretended cloud was not in the understanding or contemplation of the parties at the time. When the deed from A. O. Frees was obtained, and not until then, was the quitclaim deed or the mortgage placed upon record, and since then both have been recorded by the respective holders thereof; evincing very clearly that both of them understood that the condition had been performed.

The mortgagor, *R. W. Frees*, is estopped by the above facts, and by his conduct otherwise, from claiming that his title is not good and perfect. He has retained all the fruits of the transaction, and has offered to return none of them.

The condition was fully performed. The railroad mortgage was not, and the foreclosure and sale thereunder are not, a cloud even upon the title. From anything appearing in this case, the father, A. B. Frees, had no title whatever when he gave the mortgage. His possession, even, must be referred to the legal title of A. O. Frees, the patentee from

the state; and what possession he had was by his favor and permission. The mortgage was not such a cloud or incumbrance on the legal title as a court of chancery could be asked to remove. The test universally applied in such cases is that the outstanding title or claim must be at least an *apparent* cloud upon the real title. The mortgage is not an apparent cloud upon the title. It rests upon no title whatever in the mortgagor. It was given by an entire stranger to the title. The claim is too transparent, gauzy, and flimsy to be a cloud. The title against the mortgage is as good and perfect as it can be made by a court of chancery; for in such a case "it must be apparently good against the title for which the relief is sought." *Gamble v. Loop*, 14 Wis. 466. " If the invalidity of that which is alleged as a cloud appears on face of the record by which it is shown to exist, equity will not interfere. It would be idle to set in motion the machinery of the law to nullify that which appears on its face to be null." *Meloy v. Dougherty*, 16 Wis. 269; *Truesdell v. Rhodes*, 26 Wis. 215; *Maxon v. Ayers*, 28 Wis. 612. " It must apparently constitute a good title." *Moore v. Cord*, 14 Wis. 213. " Unless it was made to appear that the cloud complained of was an *apparent* incumbrance of the land, rendering a resort to evidence *aliunde* the record necessary to show that it was invalid, the court would refuse relief." *Pier v. Fond du Lac*, 38 Wis. 470. If the pretended incumbrance is so clearly void as to be beyond all doubt or question, then it is no cloud upon the real title; and so, if the title is beyond all doubt or question a good and perfect one, nothing need be done to make it so,— are axioms; and this is the precise character of this pretended incumbrance, and of the real title which the said *R. W. Frees* has obtained from A. O. Frees. This principle is so reasonable and self-evident that other authorities need not be cited. There is nothing in this case to show that A. B. Frees, the father, did not occupy the land by mere permis-

sion of A. O. Frees, the real owner, and under him and his title. It is *title* and nothing else, or a good and perfect title, that is within the condition, and that was secured.

*Second.* It seems to us that there was no evidence that the land was the homestead of *R. W. Frees* and his wife, *Clara.* (1) They did not *occupy* the land, except as under the widow of A. B. Frees, deceased, who remained in possession after the husband's death, and who had a life-estate in it by his will. They did not "own and occupy".the premises in the sense of the homestead law. By the agreement, she was to continue to live on the premises during her life, and she did so occupy it until she died in 1873. (2) They appear to have had another homestead in the same section. (3) The mortgage in suit was to secure the payment of the *purchase money.* The mortgage recites that "this mortgage is given to secure the purchase money of the above premises." It was at least and strictly given for the purchase of an undivided half of the premises at the time; and the agreement contemplated that Angel B. Frees should procure the fee-simple title to the whole, as the consideration of the mortgage. The mortgage correctly called it the "purchase money." (4) A homestead cannot be *jointly* held with another. *West v. Ward*, 26 Wis. 579.

The question is raised and argued in the briefs of counsel whether the mortgage embraced the title acquired from A. O. Frees. We think that the mortgage does embrace that title. It was within the agreement, as a part of the contract. When the mortgage was given, the mortgagor had no title; and it was agreed that, before the quitclaim deed and the mortgage should take effect, a good and perfect title should be procured. When the title was procured, the mortgage took effect in fact and by relation only at its date. Angel B. Frees sold to *R. W. Frees* a good and perfect title, and caused such title to be conveyed to him as the consideration of the mortgage; and it was a part of the agreement, implied at least, that the mortgage should be

co-extensive with the purchase and conveyance, as security
for the purchase money. It was clearly intended that it
was the title to be acquired that was mortgaged; else the
mortgage, as a security, was absolutely void for want of
title in the mortgagor. The title was not subsequently ac-
quired in this case, for it was acquired before any purchase
money was owing or the mortgage became a security there-
for. But if it could be called "*after*-acquired property"
or title, we think it was clearly within the agreement.
*Farmers' L. & T. Co. v. Fisher,* 17 Wis. 114; *Pierce v. M.
& St. P. R. Co.* 24 Wis. 551. It was a part of the agree-
ment that the title should be procured and made good and
perfect, and the agreement and quitclaim deed and mort-
gage are parts of one transaction, and the condition for a
perfect title was equivalent to a covenant of warranty or
for further assurance. The learned counsel of the respond-
ent says, in his brief, that "he does not wish to be under-
stood to claim but that there are cases when a court of
equity will hold after-acquired interest; but this, only upon
an *equitable claim, and between the parties to the mortgage.*"
If there can be a case in which such an equity may be en-
forced, it would seem to be this; for there is every reason of
fairness, justice, and good conscience that all the title con-
veyed should pass back to the grantor under the mortgage
for the purchase money.

The mortgage of the defendant *Ronan* was given long
after the mortgage in suit took effect upon the title acquired
from A. O. Frees, and after its registration. It is not per-
ceived how she can claim priority for her mortgage on such
title. The authorities cited by the eminent counsel of the
respondents do not appear to be applicable to the facts of
the case.

*By the Court.*— The judgment of the circuit court is re-
versed, and the cause remanded with direction to render
judgment of foreclosure against the defendants.