CHARLES BROKAW

v.

ALEXANDER OGLE et al.

*Opinion filed November 8, 1897.*

1. HOMESTEAD—*homestead right may exist in an undivided interest in land.* An undivided interest in land, accompanied by exclusive possession, will support a right of homestead in one of the co-tenants. (PHILLIPS, C. J., dissenting.)

2. SAME—*two estates of homestead cannot exist together in same land.* Two separate estates of homestead cannot exist in the same land at the same time.

3. SAME—*remainder-man cannot acquire homestead during existence of life estate.* An heir entitled to the reversion cannot acquire a homestead interest in land during the existence of the widow's homestead therein.

4. JUDICIAL SALES—*interest of heir may be sold subject to homestead right of life tenant.* An heir's undivided interest in land may be levied upon and sold subject to the homestead right of the widow therein.

5. SAME—*inadequacy of consideration alone is not ground for setting aside a sale.* Mere inadequacy of consideration will not justify a court of equity in setting aside a judicial sale, where there are no circumstances of fraud or irregularity attending it.

6. PARTITION—*premises may be partitioned subject to dower and home-stead.* Premises inherited by heirs may be partitioned subject to the right of dower and the homestead estate of the widow.

APPEAL from the Circuit Court of Pike county; the Hon. JEFFERSON ORR, Judge, presiding.

This is a bill for partition filed by appellant on June 20, 1895, and subsequently amended, to which, as originally drawn and as subsequently amended, Alexander Ogle and Hiram Ogle and their wives, and one A. G. Crawford, holding a mortgage upon the premises sought to be partitioned, were made parties defendant. The premises were owned in his lifetime by Zachariah Ogle, who died intestate, leaving a widow, Frances Ogle, and four children, to-wit: Alexander, Hiram and Malcolm Ogle and Nancy J. McMullin, and one grandchild, James

E. Fowler, the son of a deceased daughter, who died before her father. Alexander and Hiram Ogle purchased the interests of the other heirs, so that each owned an undivided half, subject to the dower and homestead of the widow. Complainant levied upon the undivided half owned by Alexander Ogle under a judgment against Alexander Ogle, and obtained a sheriff's deed thereto. The court below dismissed the bill, finding that the premises were Alexander Ogle's homestead, and that, as no proceedings were taken to set off the homestead, the execution sale was void, and complainant was not entitled to partition.

The present appeal is prosecuted from such decree of dismissal.

WILLIAMS & WILLIAMS, for appellant:

A homestead cannot exist in a remainder. There must be a present right of occupancy. *Murchison* v. *Plyler*, 87 N. C. 79.

Two tenants in common residing in separate buildings on the same premises may each be entitled to a homestead, but there cannot be two distinct homesteads acquired by the occupancy of the same dwelling. *Meguiar* v. *Burr*, 81 Ky. 32.

The interest to entitle one to a homestead must be a possessory interest. *Watson* v. *Saxer*, 102 Ill. 585; *Feldes* v. *Duncan*, 30 Ill. App. 469.

A homestead cannot be jointly held with another. *Cornish* v. *Frees*, 74 Wis. 490.

Both the widow and remainder-man cannot have a homestead in the same tract of land. *Merrifield* v. *Merrifield*, 82 Ky. 526.

A homestead estate can have no separate existence independently of the title on which it is dependent and is commensurate with the same, whether the homestead is in the owner of the fee, for life or for years. *Browning* v. *Harris*, 99 Ill. 556.

One having an undivided interest in a larger tract than is by statute allowed for a homestead, is not thereby entitled to claim as a homestead any more of a tract than the amount specified in the statute. *Ward* v. *Huhn*, 16 Minn. 159; *O'Brian* v. *Kreuz*, 36 id. 136.

When real estate is claimed as a homestead, it is immaterial whether the claimant has at other times used and claimed the same as a homestead. His rights depend on the facts existing at the time the levy is made. *Ingle* v. *Lea*, (Texas) 8 S. W. Rep. 325.

The statute requiring the homestead to be set off before the premises are sold under execution is simply directory. A non-compliance with it will not render the sale void, and in a suit in chancery the court, in the exercise of its equitable powers, may adjust the rights of the parties as the circumstances seem to require, and may compel a division of that portion of the premises in excess of the homestead, or a payment of the judgment. *Leupold* v. *Krause*, 95 Ill. 440; *Loomis* v. *Gerson*, 62 id. 11; *Stevens* v. *Hollingsworth*, 74 id. 202; 22 Am. & Eng. Ency. of Law, 578.

A. C. CRAWFORD, for appellees:

A parol partition of land among tenants in common, carried into effect by possession taken by each party of his share, is valid and binding as to the parties thereto and those claiming under them. *Gage* v. *Bissell*, 119 Ill. 298; *Shepherd* v. *Rinks*, 78 id. 188; *Nichols* v. *Padfield*, 77 id. 253; *Manly* v. *Pattee*, 38 id. 129; *Tomlin* v. *Hilyard*, 43 id. 300.

A severance of possession among tenants in common may be inferred from far less proof than would be required to prove a sale to a stranger. *Tomlin* v. *Hilyard*, 43 Ill. 300.

Under the statute of the State of Illinois a homestead right is not a mere exemption given to the householder, but it is an estate in the land to the value of $1000. *Eldridge* v. *Pierce*, 90 Ill. 474; *Browning* v. *Harris*, 99 id. 456; *Hartman* v. *Schultz*, 101 id. 456.

A debtor has an·estate of homestead in the whole farm, regardless of quarter section lines or numbers of lots or tracts, to the extent of $1000, and if not worth more than that sum the whole is exempt. *Darby* v. *Dickson,* 4 Ill. App. 90; *Hartman* v. *Schultz,* 101 Ill. 437; *Kitterlin* v. *Insurance Co.* 134 id. 647.

The estate of homestead embraces property to the extent in value of $1000, and is not controlled by any specific degree of interest or character or title in the property. It is the land itself which constitutes the homestead, and not the right of occupancy. *Hartman* v. *Schultz,* 101 Ill. 451; *Eldridge* v. *Pierce,* 90 id. 474; *Browning* v. *Harris,* 99 id. 459; *Watson* v. *Saxer,* 102 id. 585.

Wherever a debtor has such an interest in land as can be sold under execution, and he occupies that land with his family as a home, it is exempt from levy and sale, under the laws of this State, since 1873. Rev. Stat. chap. 52, sec. 1; *Feldes* v. *Duncan,* 30 Ill. App. 475; *Browning* v. *Harris,* 99 Ill. 456; *Watson* v. *Saxer,* 102 id. 585; *Eldridge* v. *Pierce,* 90 id. 474.

A sale on execution of the fee in the homestead of a judgment debtor without observing the requirements of the statute in that behalf is void, so as to convey no title capable of being asserted in a court of law, and, since 1873, in equity. *Bullen* v. *Dawson,* 139 Ill. 663; *Stevens* v. *Hollingsworth,* 74 id. 202; *Hartwell* v. *McDonald,* 69 id. 293; *Conklin* v. *Foster,* 57 id. 104; *Barrett* v. *Wilson,* 102 id. 302; *Kerr* v. *South Park Comrs.* 8 Biss. 276.

A debtor may sell his homestead while temporarily elsewhere, and give a good title, and free from the lien of any judgment then existing. *Moore* v. *Flynn,* 135 Ill. 74.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The farm in question consisted of 160 acres. When Zachariah Ogle, who owned the fee simple title to it, died on December 14, 1888, he occupied the house upon it as a

residence. The house so occupied by him was upon the west half of the farm. Before and at his death, he was a householder and had a family, and was entitled to an estate of homestead to the extent in value of $1000.00 in the farm and buildings thereon. His homestead, and all right and title therein, were exempt from attachment, judgment, etc., as provided in section 1 of the Exemption act. (2 Starr & Cur. Stat.—2d ed.—p. 1865).

Frances Ogle, the wife of Zachariah Ogle, survived him, and continued to live in the house upon the west half of the farm. "Such exemption" continued after the death of her husband for the benefit of herself, as long as she continued to occupy the homestead, and of her children, until the youngest child became twenty-one years of age, in accordance with the provisions of section 2 of the Homestead act. (2 Starr & Cur. Stat.—2d ed.—p. 1871). It appears that in October, 1891, all of her children, and her grandson, were of age. At that time Malcolm Ogle, her youngest son, and James E. Fowler, her grandson, conveyed their two-fifths interest in the farm to their older brothers, Alexander Ogle and Hiram Ogle. On May 29, 1893, her daughter, Nancy J. McMullin, conveyed her one-fifth interest to said Alexander and Hiram. At the latter date, Alexander Ogle and Hiram Ogle owned the whole farm, each an undivided one-half thereof, subject to a mortgage thereon, dated May 21, 1893, for $950.00, drawing seven per cent interest, executed by them to one Crawford, and subject to the dower of the widow, Frances Ogle, and to her right of homestead.

On May 29, 1893, Mrs. McMullin, who had a husband and family, lived in her own home, and not with her mother. Hiram Ogle lived with his family in a house upon the east half of the farm. Whether this house was built before his father's death, or thereafter, does not appear; but he lived there in pursuance of an oral agreement for partition between himself and his brother, Alexander, by the terms of which he was to take the east half

and Alexander the west half of the farm.   The right of Alexander to the west half was subject, however, to the right of occupancy thereof by his mother as long as she lived.   Alexander Ogle in 1893, and for some years prior thereto, cultivated a farm in what is called the "Sny bottom," about eight miles from the home farm above referred to.   This farm he did not own, but had leased it from the owner thereof.   He lived upon it with his wife and children most of the time, although he also lived with his mother in the house upon the west half of the home farm a part of the time.   Malcolm Ogle was a single man, and lived in the same house with his mother a portion of the time before her death, which occurred on April 10, 1894, but just when he lived there is not shown by the evidence; it is clear, however, that he did not live there while the premises were in the occupancy of one Frank Black, a tenant of the widow, Frances Ogle, as hereafter stated.

The appellant obtained a judgment against Alexander Ogle for $116.00 before a justice of the peace on June 16, 1893, and, after execution returned *nulla bona*, a transcript was filed in the circuit court of Pike county on December 11, 1893, and an execution was issued and levied upon the undivided one-half interest of said Alexander Ogle in said farm.   The premises so levied upon were sold by the sheriff on February 24, 1894, for $145.45 under the execution aforesaid to appellant, and, not having been redeemed from such sale within the statutory period, were conveyed to appellant by sheriff's deed, dated May 27, 1895.

Appellant seeks partition, as being the owner of an undivided one-half of the premises in question by virtue of his sheriff's deed.   Appellee, Alexander Ogle, claims that the sheriff's sale was void upon the alleged ground, that, when the transcript from the justice of the peace was filed in the circuit court, and when the levy and sale were made, he was occupying the premises as his homestead, and said premises were worth less than $1000.00.

No steps were here taken to set off the homestead in the manner prescribed by the statute.

A sale on execution of the homestead of the judgment debtor without observing the requirements of the statute in that behalf is void so as to convey no title, capable of being asserted in a court of law. (*Bullen* v. *Dawson*, 139 Ill. 633, and cases there cited). Where the homestead premises are not worth more than $1000.00, a judgment against the owner is no lien upon them, and, when the debtor sells them, the purchaser takes them to that extent free from all judgment liens. The debtor's homestead to the extent of $1000.00 in value is exempt from levy and forced sale. (*Asher* v. *Mitchell*, 92 Ill. 480; *Leupold* v. *Krause*, 95 id. 440; *Halliday* v. *Hess*, 147 id. 588; *Bach* v. *May*, 163 id. 547).

The testimony is not altogether clear as to the value of the interest levied upon; Alexander and Hiram Ogle paid about $900.00 for the three-fifths interest purchased by them in 1891 and 1893, that is to say, about $300.00 for each one-fifth. No other proof of value appears in the record. At these figures, the value of the whole farm would not be over $1500.00, and after deducting the mortgage of $950.00 and interest, the undivided half levied upon would be worth only about $500.00; and counsel for appellees estimates the value of the whole premises upon the basis of the amounts at which these purchases were made.

There is conflict in the authorities upon the question, whether there can be a homestead in an undivided interest in land, or, in other words, whether an estate in co-tenancy will support a right of homestead in one of the co-tenants, or whether homestead can only exist in an estate in severalty. (Thompson on Homestead and Ex. secs. 180-189; Waples on Homestead and Ex. pp. 134-138). We are inclined to the opinion, that an undivided interest, accompanied by exclusive possession, will support the homestead right. (*Herdman* v. *Cooper*, 29 Ill. App. 589; *Kaser* v. *Hass*, 27 Minn. 406; Freeman on Co-tenancy and Par. sec.

54; Thompson on Homestead and Ex. sec. 181). The objection, usually urged against allowing a homestead estate to attach to an undivided interest, is, that, in setting off the homestead, the rights of the co-tenants may be interfered with, and the particular part, set off as a homestead, might, on partition, fall to one of the other co-tenants. But this is a matter of which the other co-tenants alone can complain, and, if their rights are respected, persons who are not co-tenants, cannot object. The object is to protect the portion set off from judgment levies and sales, and not to give an assured title thereto. The co-tenant of the claimant of a homestead cannot question the latter's "right to acquire a homestead interest in the property, so long as such co-tenant is allowed to enjoy all his rights and privileges in and to said property as a co-tenant." (*Tarrant* v. *Swain*, 15 Kan. 149).

We do not, therefore, regard the fact, that Alexander Ogle's interest in the farm was an undivided one-half thereof, as militating against his claim to a homestead, if in other respects his right thereto is established. Especially is this so, in view of the arrangement with his brother, Hiram, the owner of the other undivided half, as to a partition, which was to give the west half to Alexander and the east half to Hiram. Of this, however, the judgment creditor had no notice.

Nor can it be doubted, that, if Alexander did have a homestead, the sheriff's sale of it was absolutely void, it being less in value than $1000.00. The question, which it has been most difficult for us to decide, is the question whether his occupancy of the premises, if he occupied them, was of such a kind as to bring it within the requirements of the statute as to homesteads. It will be noticed, that the filing of the transcript, and the levy upon and sale of the property, all took place in the lifetime of his mother, the widow of Zachariah Ogle. The homestead exemption continued for her benefit after her husband's death. It is true, that her homestead was never assigned

to her by any formal proceeding, but she was permitted by the sons to reside in the house on the west half of the farm, and to receive the rents thereof from the time of her husband's death to the date of her own death. It was called her homestead and treated and regarded as such. Sometimes her son, Alexander, occupied the house with her, and called it his homestead. He had some furniture there which he never removed, but most of the time he lived with his family upon another farm distant eight miles, which he rented and cultivated. Mrs. Frances Ogle seems to have been in feeble health during the later years of her life, and spent some of her time visiting in Indiana, and some of her time with her daughter, Mrs. McMullin; but she never abandoned the premises. During the last six months of her life, she was at the house of Mrs. McMullin. On November 4, 1893, she leased the homestead premises to one Frank Black, who occupied them as her tenant until four or five days before her death on April 10, 1894. This lease was made for her by her daughter, Mrs. McMullin, and the rent paid by Black was paid for her use to Hiram Ogle, and not to Alexander. While Black occupied the premises, Alexander Ogle was living upon his farm in the "Sny bottom," and did not take possession of the homestead until Black left, and until a few days before his mother's death.

While Black was in possession as tenant, the transcript was filed, and the execution was issued and levied, and the sale was made. Surely, this was during the existence of the homestead right in Mrs. Ogle, and during the possession of the homestead by her. Whatever rights Alexander had in the homestead, even when he occupied it with his mother, were subordinate to her homestead rights. She was the householder. Her youngest son, Malcolm, may have lived with her up to the time of the lease to Black. But, whether he did or not, she was not deprived of her homestead by the fact, that her children were of age, and, except one, lived to themselves and had

families of their own. "A widow without children is as much entitled to retain the homestead of her husband as one with children, for she may occupy it herself, with servants, or alone, if she chooses. But if it is more convenient or profitable for her, what reason is there why she may not let it to another, for a term of years, until she may wish to return to it?" (*White* v. *Plummer*, 96 Ill. 394).

If the present case was one where the execution had been levied upon the homestead estate of Mrs. Ogle, a different question would be presented. In such case, the levy and sale would be void and of no effect. But the question here is, whether an adult son, having a wife and children of his own and engaged in cultivating a distant farm, can, by occasionally occupying the homestead of his mother, his father's surviving wife, or by leaving some of his furniture in his mother's homestead, claim her homestead as his own, or claim to have a joint homestead with her, so as to protect the interest, which he owns as heir of his father in the homestead property, from being subjected by his creditors to the payment of his own individual debts. This question must be answered in the negative.

"The estate of homestead in a widow in the lands, of which her husband died seized, is a conditional life estate, subject to the joint right of occupancy of the children of the deceased husband during the minority of the youngest thereof. The estate is upon condition, that it shall not be voluntarily surrendered or abandoned." (*Jones* v. *Gilbert*, 135 Ill. 27). It cannot be claimed, that the widow surrendered or abandoned the homestead, because she went to her daughter's house to be taken care of during her last sickness, and rented the homestead place during her absence, in order to get income enough from it to pay the expenses of her sickness. (*Walters* v. *People*, 18 Ill. 194; *Browning* v. *Harris*, 99 id. 456; *Hagerty* v. *Hagerty*, 149 id. 655).

Where the head of the family, having an estate in fee in the homestead premises, dies, the right of the homestead devolves upon the surviving wife by operation of law. A life estate is carved out of the fee for her estate of homestead. The heirs take a reversionary interest or remainder, expectant upon the termination of the estate for life and for years created by the statute. (*Browning* v. *Harris, supra; Jones* v. *Gilbert, supra; Kitterlin* v. *Milwaukee Mechanic's Ins. Co.* 134 Ill. 647; *Merritt* v. *Merritt*, 97 id. 243).

If there is no will, the homestead premises are vested in the heirs, subject to the particular estate or right of occupancy for life, which is given to the widow. The Partition act, which went into force in 1874 after the Homestead act which went into effect in 1873, expressly provides for the partition of premises, inherited by heirs, subject to dower and the estate of homestead. (*Merritt* v. *Merritt, supra;* 3 Starr & Cur. Stat.—2d ed.—p. 2921).

The interest of the heir may be levied upon and sold subject to the homestead right, especially when the homestead has not been assigned. We see no reason why the appellant, as a judgment creditor, could not levy upon and sell the interest of Alexander Ogle, subject to the homestead rights of Mrs. Ogle. In *Hartman* v. *Schultz*, 101 Ill. 437, it was held, that no sale can be rightfully made of the homestead by the administrator of the deceased householder to pay his debts, when the property does not exceed in value $1000.00, until the exemption in favor of the widow and minor children has been in some mode terminated; and that the homestead, when not exceeding $1000.00 in value, cannot even be sold subject to the homestead right. But it has never been held, that a judgment against one of the heirs cannot be enforced against his undivided interest, subject to an unassigned right of homestead in the widow. (Waples on Homestead and Ex. p. 652; *Hartes* v. *Seinsheimer*, 67 Tex. 356; Thompson on Homestead and Ex. sec. 573).

The widow, being the head of the household, owns the homestead estate during her life and until the youngest child becomes twenty-one years old. The word, "householder," means the head, or person, who has the charge of the family, and does not apply to the subordinate members or inmates of the household. (Thompson on Homestead and Ex. sec. 45; Waples on Homestead and Ex. p. 58). It was held in *Zander* v. *Scott*, 165 Ill. 51, that a householder may not necessarily be the head of a family; but in that case it appeared that the husband and wife lived together, and had children, and the wife owned the fee of the homestead property; and it was held, that she was a householder having a family, although not the head of the family. The ordinary signification, however, of a householder is, that such a person is the head of the family, upon whom the other members are dependent. The family, within the meaning of the Homestead law, consists of those members of the household, who are dependent upon the householder for support, or to whom the householder owes some duty. (*Holnback* v. *Wilson*, 159 Ill. 148). To constitute a homestead, there must be a householder and a family. There cannot be two householders. If Mrs. Ogle was here the head of the household, or the householder, her son, Alexander, could not also be the head of the family or the householder, even though he lived with his mother a part of the time. It certainly cannot be said, that, having a family of his own, whom he supported by operating a distant and independent farm, he occupied any relation of dependence, so far as his mother was concerned.

If Alexander Ogle had a homestead in these premises, then as his mother also had a homestead, each would be entitled to have a homestead set off. But two separate homesteads, thus laid off and described, cannot exist in the same land at one and the same time. (*Murchison* v. *Plyler*, 87 N. C. 79). Moreover, homestead involves a present right of occupancy. As Mrs. Ogle was life tenant,

she was entitled to the present right of occupancy, but as Alexander Ogle was only a remainder-man or reversioner, his right of occupancy could not attach until the expiration of the life estate. The provisions of law in reference to a homestead do not apply to a remainder dependent upon a life estate. (*Murchison* v. *Plyler, supra*). Both the widow and the remainder-man cannot have a homestead in the same tract of land. (*Merrifield* v. *Merrifield*, 82 Ky. 526). Nor can a homestead be occupied jointly with another person, so as that both shall have estates of homestead within the meaning of the statute. (*Cornish* v. *Frees*, 74 Wis. 490; *Kyle* v. *Wills*, 166 Ill. 501).

Freeman, in his work on Executions, says: "The homestead right, if any exists, is in the holder of the estate in possession. Hence, a reversioner or remainder-man, because his estate is incompatible with the existence of a homestead in fact, cannot secure its exemption from forced sale by claiming it as a homestead." (1 Freeman on Executions,—2d ed.—sec. 242). Waples, in his work on Homestead and Exemption, says: "Upon the death of the father, the mother succeeds to the headship of the family." (Waples on Homestead and Ex. p. 644).

In *Cornish* v. *Frees, supra*, a father entered into possession of certain premises, and, dying, devised them to his widow for life, and on her death to his two sons. One of the sons, being an adult and having a wife, lived with his wife upon the premises, and his mother, his father's widow, also lived thereon; and it was held, that the son did not have a homestead in the premises, but was in possession under and with his mother; and that he and his wife did not "own and occupy" the premises in the sense of the Homestead law, but held possession under the widow, who remained in possession after her husband's death and had a life estate under his will; it was there said: "A homestead cannot be jointly held with another."

In *Kyle* v. *Wills, supra*, we have recently held, that the estate of homestead devolves upon the widow, by opera-

tion of law, *eo instanti* upon the death of her husband, and continues for the benefit of the widow and children until the youngest becomes twenty-one years of age; but that this benefit does not extend to married children, having families and homes of their own. So, here, Alexander Ogle had no homestead in the premises occupied by his mother, which entitled his interest to exemption from execution sale.

We are not prepared to say, that the consideration, for which the interest of Alexander Ogle was purchased by the appellant, was grossly inadequate. At the time of the levy and sale, it was not worth, with the mortgage upon it, more than about $500.00 according to the contention of the appellees. In addition to this, it was at that time, subject to the widow's dower and homestead. It is true, that inadequacy of consideration will sometimes justify a court of equity in setting aside a judicial sale, when such inadequacy is coupled with circumstances of irregularity or fraud. (*Parker* v. *Shannon*, 137 Ill. 376; *Bach* v. *May*, 163 id. 547; *Bullen* v. *Dawson*, 139 id. 633). But, in the case at bar, there were no circumstances of irregularity or fraud attending the sale, even if the consideration therefor was inadequate. The sheriff's deed was not, therefore, invalid. Moreover, appellee, Alexander Ogle, filed no cross-bill, setting up any equities, or asking that the sale be set aside. The case, as presented by the record, is an ordinary bill for partition; and the answer merely sets up, that the complainant's title under the sheriff's deed was void, because the defendant is claimed to have had a homestead in the premises, which was not set off to him. This claim cannot be sustained under the facts of this case.

The decree of the circuit court is reversed, and the cause is remanded to that court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*

Mr. CHIEF JUSTICE PHILLIPS, dissenting:

To the extent this opinion holds that the interest of a tenant in common will support a right of homestead in one of the co-tenants in the premises I cannot concur. On this question the authorities are conflicting. It has been held that an estate in common will support a right of homestead in one of the co-tenants in Vermont, Iowa, Texas, Kansas, New Hampshire and Arkansas. Whilst the statutes of those States are not the same, the general principle on which they sustain the right of homestead in a co-tenant is, that whilst such right cannot be enforced hostile to a co-tenant or one holding under him, yet third persons, nor a co-tenant, cannot question his right to acquire a homestead interest in the property, so long as his co-tenant is allowed to enjoy all his rights and privileges in such property, and no third person should be permitted to avail himself of the law of co-tenancy for his own gain. That an estate in common will not support a right of homestead in a co-tenant has been held in Massachusetts, California, Minnesota, Wisconsin, Louisiana and Michigan. The reasons given for the latter view are usually the impracticability of assigning such interest, and absence of statutory power in the court to do so.

The first section of the Exemption act provides the householder is entitled to the farm or lot, etc., owned or possessed and occupied as a residence. Whatever interest is so owned or possessed, in order to constitute the homestead it must be of some specific portion capable of being set apart by metes and bounds, that it may be separated from that which is not exempt. The statute provides that the homestead may be set off in the method there directed, but it would be impossible to apply any of the methods declared by the statute to an estate in common. The tenant in common owns nothing in severalty, and no part could be set off to him which did not belong equally to his co-tenants. If the legislature intended to include tenants in common as being entitled to a homestead in lands

170—9

so held, they would have provided a method of setting off the same. By the first section of the act the "homestead, and all right and title therein, shall be exempt from attachment, judgment, levy or execution sale for the payment of his debts, or other purposes, and from the laws of conveyance, descent and devise, except as hereinafter provided." While thus fixing certain qualities and rights attaching to homesteads, the statute is silent as to the homestead right attaching to lands held in common by two or more tenants. Being silent in this respect, those States which hold that an estate in common will support a right of homestead in one of the co-tenants must necessarily add to the statute and take from it. It cannot be free from the laws of conveyahce, for if it cannot be partitioned the co-tenant may have it sold. That would be a violation of the spirit and words of the act, and would take away one of the rights and qualities of a homestead. If it should be sought to set off the co-tenant's interest in the manner prescribed by the statute, the homestead so set off might be at once defeated by the co-tenant having partition made, or sold if it could not be divided. It renders necessary the addition of words to the statute which gives a homestead in the farm or lot owned or possessed and occupied as a residence. If a farm or lot is owned by the householder, no one else has an interest therein. If it is not, then the homestead cannot attach. The legislature has made no provision for a case of this character, and it is not our province to do so. If hardships arise, they may be remedied by legislation which shall meet all the exigencies of such cases. The best interpretation which can be given this statute is to limit it to cases of sole ownership or possession.

In the case of *Tomlin* v. *Hilyard,* 43 Ill. 300, a similar question was before this court and the case was decided sustaining the right of homestead, because there had been a parol partition followed by a several possession. The reasoning in that case sustains what I have here written.