## In re McGOWAN.

(District Court, D. South Carolina. May 29, 1909.)

BANKRUPTCY (§ 396*)—EXEMPTIONS—SOUTH CAROLINA STATUTE—"HEAD OF A FAMILY."

Under Const. S. C. art. 3, § 28, which provides that there shall be exempt "to every head of a family residing in this state, whether entitled to an exemption in lands or not, personal property to the value of $500," as construed by the Supreme Court of the state, the head of a family is one who controls, supervises, and manages a house and has living with him and is supporting some person whom it is either his moral or legal duty to support; and a bankrupt who was a single man, living alone, and whose parents were living, is not the head of a family and entitled to the exemption because he was at the time of his bankruptcy paying the board and expenses of a sister at a school.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 396.*

For other definitions, see Words and Phrases, vol. 4, pp. 3225–3233; vol. 8, p. 7677.]

In Bankruptcy. On review of decision of referee.

S. G. Mayfield, for bankrupt.

Mordecai, Gadsden, Rutledge & Hagood, E. E. Ritter, and E. F. Carter, for creditors.

BRAWLEY, District Judge. The question that comes up on this review of the decision of the referee is whether the bankrupt is entitled to a homestead exemption of $500 out of the proceeds of the sale of the stock of merchandise. The referee holds that he is so entitled. The creditors except on two grounds: (1) That the bankrupt is not the head of a family. (2) That in no event would he be entitled to homestead exemption in the goods in question as against creditors who present claims for the purchase money of the same.

McGowan, the bankrupt, is a young man about 23 years of age, and unmarried. His father and mother live in Colleton county, upon a tract of land owned by the latter. About three years ago the bankrupt moved to the town of Bamberg in the adjoining county, and began a mercantile business on his own account. For a time he seemed to prosper, receiving a good deal of money from the mercantile business, which he spent with a lavish hand. Moved by a creditable desire to assist his family, during his days of apparent prosperity he had one of his sisters brought to Bamberg and put her at the Carlisle Fitting School, paying for her board and tuition, and supplying some of her clothing, and announced his intention of educating and supporting her. The sister boarded at the school, and McGowan boarded elsewhere in the town, and it appears that during the same period he contributed to the education of a younger brother, who lived at home with his father's family. At no time did the sister live under the same roof with the bankrupt, and there was no formal adoption of the younger sister or brother, but it appears that it was his intention to educate and support the sister, and perhaps the brother, the father and mother of the bankrupt being in needy circumstances.

The money that he expended was derived wholly from the mercantile business, which culminated in bankruptcy, his indebtedness amounting to $7,000 or $8,000, and the assets consisting of the stock of merchandise, supposed to be of the value of about $2,000.

The Constitution of South Carolina provides, in section 28 of article 3, for a homestead in lands to the value of $1,000, and "to every head of a family residing in this state, whether entitled to a homestead exemption in lands or not, personal property to the value of $500.00," one of the provisos of said section being that "no property shall be exempt from attachment, levy, or sale for taxes or payment of obligations contracted for the purchase of said homestead, or personal property exemption," etc. As will be seen, the exemption is to the "head of a family." In a broad sense, all those who are descended from one common progenitor, or are of the same lineage, may be said to be a family. We sometimes speak of the human family as being the 'descendants of Adam, but in the sense in which the word is' commonly used, and in the decisions of the Supreme Court of this state in construing the term, the definition of the lexicographers, approved and accepted by the court, is that "a family is a collective body of persons who live in one home, under one head or manager"; or, as somewhere defined, "it embraces the household, composed of parents and children or other relatives, domestics and servants, a collective body of persons living together within the same curtilage, subsisting in common, and directing their attention to a common object, the promotion of their mutual interests and social happiness"; but as will be seen when we consider the decisions in this state, the head of the family is not necessarily the father of children. The word has a sort of flexible meaning, yet in construing the homestead law, while there is no well-defined rule that is applicable to every case, and however flexible the term, it is not dependent upon the mere will or caprice of the debtor.

One of the earliest cases is Garaty v. Bu Bose, 5 S. C. 499, where it was held that a bachelor, having no persons dependent upon him and none residing with him except servants and employés, is not the head of a family in the sense of the term as used in the constitutional provision with reference to homestead exemption. The court says:

"The homestead was intended not alone as a benefit to the head of the family, but to those whose relations to the head demand on the one hand support and protection, and on the other require a contribution by the aid of their labor to the maintenance and conduct of the general establishment to which they belong. This would naturally be the case between parents and minor children, who are in terms embraced within the exception. It would not follow that, although the head of the family may not be a parent, the one substituted as the head would lose the favor of the provision, for it would extend to one having under his roof those so connected with him by ties of residence and association as to become part and parcel of his household, changing their domicile with him, and having no residence but that which they enjoy under his favor. It is not necessary to constitute a family that the relation of parent and child must exist. The respondent here is a single man, no person under the same roof with him, and no one on his premises save servants and employés. Their continuance with him is temporary. He can change them from time to time, and they at their own will may depart his service. There is absent that peculiar feature which can be better understood than described, which distinguishes the family even from those who may dwell within the limits of the same curtilage."

In Moyer v. Drummond, 32 S. C. 167, 10 S. E. 952, 7 L. R. A. 747, 17 Am. St. Rep. 850, the court held that the expression "his roof" in the above opinion was not meant to imply that one of the conditions necessary was that the person claiming to be the head of the family should be the owner of the house in which the collective body of persons alleged to constitute a family reside; that "as a matter of fact," said the court—

"it is well known that many persons who are undisputed heads of a family reside in houses which they do not own, but which are owned by their wives, and in that case, where the brother and sister lived together in a house belonging to the latter, the undisputed testimony being that the brother supported the sister and ran the establishment, the sister being dependent on him for support, and they living together as one family, it was held that the brother was the head of the family, and the court cited with approval the words of Simpson, C. J., in Rollings v. Evans, 23 S. C. 316, that the term 'family' is not to be taken in a restricted sense, but in its ordinary sense, which includes persons living in one house and under one head or manager. In that case the court affirmed the opinion of the Circuit Court, holding that the defendant was the head of the family, as his son was living with him as a part of his family. That son being a married man, no doubt entitled to have his wife and children with him, if he had any children, certainly this constituted a family, of which the defendant was the head."

In Chamberlain v. Brown, 33 S. C. 597, 11 S. E. 439, two unmarried sisters lived together, and it was held that the one who supported the dependent sister was the head of the family.

In Fant v. Gist, 36 S. C. 577, 15 S. E. 721, homestead was claimed in land on which Gist had lived, his family consisting of himself, his wife, an orphan boy, and his wife's niece, whom Gist and his wife had informally adopted. His wife and the boy had died, leaving as the only surviving members of the family Gist and the wife's niece, who had been entirely supported by Gist, who lived with him except when at school. The house had been burned, and Gist had removed temporarily to the town of Newberry, where he remained while the house was being rebuilt. It was held that Gist was the head of a family, that it was clear that prior to the death of the wife he was the head of the family, consisting of the persons named, and the question was whether he lost that character by the death of his wife and the little boy, leaving as the only other member of his family the niece, whom he had adopted, who had been taught to look to him for her support, and was still dependent upon him. "To the question thus stated," says the court, "it seems to us that there can be but one answer, and that is that Gist is still the head of the family."

In Wagener v. Parrott, 51 S. C. 494, 29 S. E. 240, 64 Am. St. Rep. 695, Parrott, his wife, and adopted daughter lived together upon the land out of which homestead was claimed. The only question in the case was whether an adopted child stood in the same relation to the head of the family as a child of the blood, and the court held that there was no difference in the eye of the law between a child of the blood and an adopted child.

It will be seen that in all of these cases there were two or more persons living together, under the same roof, which, under all the definitions, was necessary to constitute a family. The cases cited go

farther in support of the claimant's contention than any others found in the state reports, but they fall short of doing so. .That which comes nearest is Moyer v. Drummond, 32 S. C. 167, 10 S. E. 952, 7 L. R. A. 747, 17 Am. St. Rep. 850, where a brother supporting an invalid sister was held to be the "head of a family," but the facts in that case make it readily distinguishable. from this. There the "undisputed testimony," says the court, is:

"My sister and myself live together in one family; have so lived for 8 years; she is sickly; she has nothing now but the house and lot; she has no other close relations except myself. I support my sister and run the establishment; have one servant hired; my sister is dependent upon me for a support, and I support her as a part of my family."

And the court, after citing this testimony and other testimony of like import, says:

"It seems to us clear that this testimony is sufficient to show that these two persons, bearing the close relation of brother and sister, live together, that she is dependent upon him for a support which he provides for her, and that he as head of the household manages and controls, hires the necessary servants, and provides for the table," etc.

Here the brother and sister never lived together as one family. Except during the period when she was at school at Bamberg, where she boarded at the school establishment, her home was with her parents in the adjoining county.

We will now examine briefly the decisions ·in other states having similar homestead provisions. "The head of the family," says the court in Duncan v. Frank, 8 Mo. App. 286, "is a person in charge of a family, which is a collective body of persons living in one house, under one manager. The relations between them must be of a permanent and domestic character. · He need not necessarily be a husband or a father, but may be any person who has charge of or manages the affairs of a collective body, living together."

In Brokall v. Ogle, 170 Ill. 115, 48 N. E. 394, the head of the family, within the homestead statute, is a "householder or person on whom other members of the household are dependent for support, or to whom such householder owes a duty."

In Virginia the term "householder" and "head of the family" are convertible terms, and employed as explanatory one of the other. Each signifies one who provides for a family, one who keeps house with his family.

In Calhoun v. Williams, 32 Grat. (Va.) 18, 34 Am. Rep. 759, the term was held to signify one who occupies such a relationship towards persons living with him as to entitle them to a legal or moral right to look to him for support. Such relation must consist of some tie, close in its moral obligation, and permanent in its character.

In Re Morrison (D. C.) 110 Fed. 735, the court says:

"While it is true that there is some conflict of authority as to whether an unmarried man can be the head of a family, the weight of authority is in favor of considering every person as the head of a family who keeps house and has living with him, and is supporting, some person whom it is either his moral or legal duty to support. * * * A man who controls, supervises, and manages the affairs of the house is the head of the family."

In Rolator v. King, 13 Okl. 37, 73 Pac. 291:

"Although in general it is the husband, father, or mother who is the head of the family, yet where a son of full age assumes the obligation of providing for the widowed mother and her children, with whom he lives, and who are dependent upon him, he is in legal contemplation the head of the family."

A case most nearly akin in its facts to the one now under consideration is that of Jones v. Gray, 3 Woods, 494, Fed. Cas. No. 7,463. There the bankrupt, an unmarried man, residing in Athens, Ga., but not keeping house there, had a mother and unmarried sister who boarded with a married sister of the bankrupt in Augusta, Ga. They had no means of support, and had been supported for some years by the bankrupt. Woods, Circuit Judge, considered the question whether, under the laws of Georgia granting exemptions to the head of the family, the bankrupt upon this state of facts could be regarded as the head of the family, and held that he could not, saying:

"He, a single man, without family of his own, lives in one town and supports by his contribution his mother and unmarried sister, who live in another town and are inmates of the family of the married sister of the bankrupt. To call a man so situated the head of the family is, in my opinion, unwarrantably extending the meaning of the phrase. The bankrupt and his mother and unmarried sister do not constitute a family. The bankrupt cannot therefore be the head of the family, for a family is a collective body of persons who live in one house and under one head or manager."

There is nothing in the circumstances of this case which could lead the court to distort the accepted meaning of the term, which is that the head of the family is one who controls, supervises, and manages a house, and has living with him, and is supporting, some person whom it is either his moral or legal duty to support. The bankrupt never had living with him any such family. So long as he was apparently prosperous, he educated and supported his sister, but she never lived with him, and there was no obligation permanent in its character which bound him to support her. It is true that the tie of blood constituted a sort of moral obligation, but there was no legal obligation which could be enforced. He might have discontinued his assistance according to his whim and fancy. He had never brought his sister to live with him under the same roof, and thus established a tie such as existed in Gist's Case and in the Parrott Case. While it was very commendable that he should contribute to the support of his father's family, it must be remembered that such contributions were drawn from a fund supplied by his creditors, and a court of justice should not be astute to find reasons for further depletion of such a fund.

As I am of opinion that the bankrupt was not the head of a family within the meaning of the constitutional provision, the decision of the referee is reversed.