In the Matter of the Estate of Susan D. Benton, deceased. Alphonso L. Benton and Emma S. Benton, Appellants, v. Clarence A. Tuttle, Executor, Appellee.

### Gen. No. 17,494.

1. HOMESTEAD—*extent of estate.* The existence of an estate of homestead in property worth less than $1,000 excludes all other interest therein during its continuance.

2. HOMESTEAD—*rights where worth more than* $1,000. If property is so situated that the homestead estate cannot be set apart, a court of equity has jurisdiction to require the owner of the homestead estate to accept the sum of $1,000 in lieu thereof, if tendered by either a creditor having a lien upon the premises or by an heir, grantee or devisee, and to remove from the premises.

3. HOMESTEAD—*evidence of value of property.* Where, on a devise of a life estate in and to homestead property, the parties agreed that the rental value of the whole premises was $100 a month, a decree on a bill for the assignment of dower and homestead found

that the premises were worth $16,000 subject to a mortgage of $10,000, and the estate of testator was large and the executors had ample funds with which to pay all debts, legacies and charges, the premises are shown to be worth more than $1,000.

4. HOMESTEAD—*when widow may be required to move.* Where a testator devises a life estate in and to homestead property to his wife and two other persons, and the premises are worth more than $1,000, and are not so situated that the homestead estate can be assigned, the widow is not entitled in equity to the exclusive possession of the whole premises, and if the parties cannot agree to an equitable arrangement the widow may be required to remove from the premises upon the payment to her of $1,000.

5. HOMESTEAD—*consideration of lease.* Where a life estate in homestead property which is worth more than $1,000 and not susceptible of division has been devised to the widow and two others, and a son leases the premises from the codevisees in consideration of the surrender of possession to him and the abandonment of the right of the codevisees of his mother to compel her to remove from the premises by making a payment to her in lieu of homestead, the lease and a guaranty of the rent by the widow are on sufficient consideration.

Appeal from the Circuit Court of Cook county; the HON. MERRITT W. PINCKNEY, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1911. Reversed and remanded with directions. Opinion filed December 19, 1912. *Certiorari* denied by Supreme Court (making opinion final).

W. P. BLACK, for appellant; CHARLES D. F. SMITH, of counsel.

STEERE, WILLIAMS & STEERE, for appellee.

MR. JUSTICE FITCH delivered the opinion of the court.

This is an appeal from an order of the Circuit Court of Cook County, by which a claim of appellants for $2,161.46 against the estate of Susan D. Benton, deceased, was disallowed and dismissed.

It appears from the pleadings and proofs that George C. Benton died in Chicago on July 26, 1902, leaving no children, but leaving a widow named Susan D. Benton. Prior to his death Benton owned in fee, and he and his wife resided upon, the premises known as No. 3207 Michigan Avenue. Both Benton

and his wife were invalids, and in June, 1902, he requested his brother, Alphonso L. Benton, and the wife of the latter, Emma S. Benton, both of whom then resided in Pennsylvania, to come to Chicago and take up their residence with him and assist in taking care of him and his wife. They complied with this request, came to Chicago, became members of his family, and assisted in the care of the two invalids until the death of said George C. Benton.

On July 25, 1902, George C. Benton made a will in which he devised to his wife, Susan D. Benton, and to his brother, Alphonso L. Benton, and to Emma S. Benton, the wife of the latter, "or the survivor or survivors of them, a life estate in and to the homestead property where I now live * * * known as the house and lot No. 3207 Michigan Avenue, in said Chicago, together with gas fixtures and pier-glass mirrors in said house, the same to be held and enjoyed by the said Susan D. Benton, Alphonso L. Benton and Emma S. Benton, the survivors or survivor of them, for and during the term of their and each of their natural lives. It is my wish that my said brother, Alphonso L. Benton, and his wife, take charge of my said wife, Susan D. Benton (who is not in good health) and look after her welfare and personal comfort during the balance of her life." Subject to said life estate and to the payment of certain specific legacies, the residue of his estate was devised to trustees to manage and control the same, pay taxes, collect rents, make repairs, etc., and out of the net income to apply one hundred and fifty dollars per month toward the personal maintenance and support of Susan D. Benton during her lifetime, and upon her death to convey the whole estate to his granddaughter "excepting, however, that said homestead property shall be subject to said life estate above created in favor of said Alphonso L. Benton and Emma S. Benton, so long as they or either of them survive."

On October 6, 1902, said will of George C. Benton

was proved in the Probate Court of Cook County. On November 5, 1902, Susan D. Benton filed in said court her renunciation of the provisions of said will in her favor and her election to take her rights under the law.

It further appears that after the death of George C. Benton, Alphonso L. Benton and his wife continued to reside with and take care of the widow, Susan D. Benton, upon the premises above mentioned. The latter had a son named Clarence A. Tuttle, and desired to have him and his wife take the place in her family of said Alphonso L. Benton and wife. Tuttle, however, refused to live in the same house with Alphonso Benton. Thereupon, negotiations were begun to bring about this change in the family relations, and as a result of such negotiations, on November 14, 1902, Alphonso L. Benton and his wife entered into an agreement with Tuttle, reciting that George C. Benton died on July 26, 1902, owning said premises, that by his will he gave a life estate therein to Alphonso L. Benton, Emma S. Benton and Susan D. Benton, the· survivors or survivor of them, that Susan D. Benton had relinquished her rights under said will and elected to take her rights as widow, and that "whereas it is the desire of said Susan D. Benton to have her son Clarence A. Tuttle rent from the said Alphonso L. Benton and Emma S. Benton their interest in said property and occupy said premises with the said Susan D. Benton, and whereas, it is agreed between all the parties hereto that the entire rental value of said building hereinafter described shall be and is hereby fixed at one hundred dollars per month, and that two-thirds of said sum shall be the amount due Alphonso L. Benton and Emma S. Benton, or the survivor of them under the terms of said will for their proportion thereof until the death of the said Susan D. Benton," thereupon (it was agreed) Alphonso L. Benton and Emma S. Benton "have demised and leased" said premises to Tuttle from November 15, 1902 "until the 30th day

of April next after the death of Mrs. Susan D. Benton;" and in consideration thereof, Tuttle agreed to pay them as rent the sum of $66.66 per month. To this agreement Susan D. Benton at the same time attached her written consent and upon the back thereof executed under seal a formal guarantee of the payment of the rent and the performance by Tuttle of all the covenants contained in the lease. In pursuance of this agreement, Alphonso L. Benton and his wife removed from said premises, and Tuttle and his wife moved into the same and continued to reside with said Susan D. Benton until her death on March 14, 1906. Clarence A. Tuttle paid the stipulated rent during the first year of his occupancy, and then, on advice of counsel, declined to pay anything further. Suits were brought against him by Alphonso L. Benton and wife, which were contested, and appear to have been dismissed. Susan D. Benton left a last will and testament in which she named her son, Clarence A. Tuttle, sole devisee and executor, which was duly admitted to probate in the Probate Court of Cook County. Thereupon, Alphonso L. Benton and Emma S. Benton, filed their claim for the recovery of rent due under said lease, basing their claim upon the guarantee of Susan D. Benton. The probate court allowed the claim. The executor appealed to the circuit court where, after a trial, the claim was disallowed and dismissed, as hereinabove stated.

It appears from the record that the theory upon which this judgment was entered in the circuit court was that Susan D. Benton was entitled to an estate of homestead in the premises in question, that such estate gave her the exclusive right to occupy the whole premises, and that "her occupancy thereof left no right or interest in said premises which claimants could convey or lease during her lifetime;" and hence there was no consideration for the lease or for Susan D. Benton's guarantee thereof.

In support of the theory adopted by the circuit court

appellee's counsel assert that there is no evidence in the record tending to prove the value of the premises in question; and upon the principle that in the absence of such proof, the court must assume that the property was worth less than $1,000 (Mueller v. Conrad, 178 Ill. 276), they have cited a number of cases holding that where such is the fact, the existence of the estate of homestead in such property excludes all other interests therein during its continuance.   There is no doubt that such is the law as applied to the facts thus assumed; but the law is otherwise where the value of the property, over and above the incumbrances thereon, exceeds $1,000. In the latter case, if the property is so situated that the homestead cannot be set apart, a court of equity has jurisdiction to require the owner of the homestead estate to accept the sum of $1,000 in lieu thereof, if tendered by either a creditor having a lien upon said premises or by an heir, grantee or devisee, and remove from the premises.   Cutler v. Cutler, 188 Ill. 285; Powell v. Powell, 247 Ill. 432, 438; Goddard v. Landes, 250 Ill. 457; Richardson v. Trubey, 250 Ill. 577.   In Powell v. Powell, *supra,* it is said (p. 438):

"In the construction of the Homestead Law, which expressly limits the extent of the homestead estate to $1,000, in connection with other provisions of the statute, this court has held that the surviving husband or widow is not entitled to the exclusive possession of an unassignable homestead which is worth more than $1,000 (Wilson v. Illinois Trust & Savings Bank, 166 Ill. 9), and that a court of equity, under its general chancery powers, independently of the Partition Act, had jurisdiction to enter a decree adjusting the respective rights of the heirs or devisees and the party entitled to the homestead.   Mix v. King, 55 Ill. 434; Hotchkiss v. Brooks, 93 Ill. 386; Wilson v. Illinois Trust & Savings Bank, *supra.*   In the Wilson case, above cited, on page 14, this court said: 'If a court of equity were powerless to prevent a person having a right of occupancy to the extent of $1,000 in value in

premises of the value of $36,000 from occupying and using the entire property, while the owner of the balance of the estate, amounting to $35,000, must stand idly by and have no benefit or enjoyment of his property, the court would fail of its purpose.' "

It appears from the record that the premises in question consisted of a single house, and while it was apparently large enough for all the parties, there is no claim that it could be so divided as to apportion any particular part thereof of the value of $1,000 to the exclusive use and occupancy of Susan D. Benton. It further appears that the parties agreed that the rental value of the whole premises was one hundred dollars a month. This fact alone, is some evidence tending to prove that the value of the property was more than $1,000. In addition to this, however, a bill in equity filed by Susan D. Benton in her lifetime for the assignment of dower and homestead in said premises, to which said Alphonso L. Benton and Emma S. Benton were parties, and the decree entered thereon in March, 1905, were offered in evidence. That decree finds, from the evidence, that the value of said premises was $16,000, and that at the death of said George C. Benton there was a mortgage on the same of $10,-000, a large part of which was paid by the executors and trustees of the last will and testament of said George C. Benton, deceased. In Kilmer v. Garlick, 185 Ill. 406, it is said: "Whether the premises were worth more than $1,000, is to be determined   *   *   * by ascertaining the value at the time of the transfer and deducting the incumbrances, and the homestead estate is to be calculated on the residue. Imhoff v. Lipe, 162 Ill. 282; Brokaw v. Ogle, 170 Ill. 115." Therefore it appears that at the date of the death of George C. Benton, the value of the property occupied as a homestead, above the incumbrance thereon, was at least $6,000. It further appears from the evidence, without contradiction, that the estate of George C. Benton was a large estate and that the executors had

ample funds in their hands with which to pay all the debts, legacies and other charges against the same.

It being thus established by the evidence that the premises in question were worth, over and above all incumbrances thereon, considerably more than $1,000, and also, by fair inference at least, that the premises were not so situated that the homestead estate could be assigned, it follows from the authorities above cited, that Susan D. Benton was not entitled in equity to the exclusive possession of the whole premises; and that if the parties could not agree on an equitable arrangement, Alphonso L. Benton and Emma S. Benton, as owners of the life estate therein, had the right to require the widow to remove from the premises upon the payment to her of $1,000. The testator had expressed the wish in his will that they "take charge of" his invalid wife, "and look after her welfare and personal comfort during the balance of her life." After his death, the widow desired her son to do this, and so far as the record shows, the only objection to his doing so arose from the attitude of the son himself. When asked whether Alphonso Benton and his wife interposed any objection to his moving into the house, Tuttle testified: "My recollection is, the only objection was more that I wouldn't come there if they were there. *I wouldn't live in the same house with them at that time.* I was coming there to take care of my mother, and *they had to get out.* It was simply a question of the best way of their getting out. * * * It was either a case of the lease or *my starting proceedings to force them out,* and the lease was the quickest way to get them out."

Under these circumstances, the arrangement culminating in the execution of the so-called lease amounted to this: In consideration of the removal from the premises of Alphonso L. Benton and his wife in order to permit Tuttle and his wife to take the place of the former, and in consideration also of the relinquishment during Susan D. Benton's lifetime, by said Al-

phonso Benton and wife of their equitable right to
tender or pay $1,000 to the widow in lieu of her home-
stead right, and to require her then to remove from
the premises, Tuttle agreed to pay to said Alphonso
Benton the stipulated two-thirds of the total rental
value of the premises. This was followed by a sur-
render of possession of the whole premises to Tuttle
and the payment by Tuttle for a year of the stipulated
rents. Tuttle's agreement to pay was therefore not
without consideration. Whether considered as an
agreement for forbearance or as a compromise, the
execution of the lease by the Bentons was a good con-
sideration for his promise to pay rent. It follows that
the circuit court erred in dismissing the claim.

The judgment of the circuit court will be reversed
and the cause remanded to that court with directions
to enter a judgment allowing the claim for $2161.46,
with interest thereon at the legal rate from the date
said claim was allowed in the probate court.

*Reversed and remanded with directions.*