ELIZABETH KYLE, impleaded, etc.

v.

ELLA WILLS.

*Filed at Springfield May 11, 1897.*

1. HUSBAND AND WIFE—*when wife may take absolute title to husband's land sold on foreclosure after his death.* A wife may purchase a certificate of sale of her husband's land sold after his death, on foreclosure of a mortgage given to a third person as security for the wife's benefit for money loaned by her to her husband, and may take the absolute title to herself.

2. REAL PROPERTY—*when purchase of land by widow does not raise resulting trust in favor of heirs.* The purchase by a widow of land mortgaged by her husband to a third person as security for her benefit for money loaned by her to her husband, does not raise a resulting trust in favor of the heirs.

3. HOMESTEAD—*homestead devolves upon widow, by operation of law, on death of husband.* The estate of homestead devolves upon the widow, by operation of law, *eo instanti* upon the death of her husband, and continues for the benefit of the widow and minor children until the youngest attains majority. But this benefit does not extend to married children having families and homes of their own.

4. SAME—*right of widow to the rents and profits of homestead.* Heirs who have attained majority and established homes of their own at the time of the death of their father have no interest in the rents and profits of the homestead, and the use of them by the widow to purchase the homestead for herself on foreclosure gives rise to no resulting or constructive trust in favor of such heirs.

5. PARTITION—*decree should not charge widow with rents and profits of land to which she has acquired title.* A decree under a bill for partition and accounting should not charge the widow with rents and profits of portions of the estate to which she has acquired title.

6. SAME—*widow not entitled to credit for taxes paid on property to which she has title.* A widow is not entitled to credits for taxes paid by her on portions of the estate to which she has acquired absolute title.

7. SAME—*when widow is not entitled to share of rents and profits on account of dower interest.* A partition decree cannot allow the widow a share of rents and profits on account of her dower interest, where such dower is never claimed or assigned.

8. SAME—*when widow is not entitled to allowance for improvements on accounting in partition.* On bill for partition and accounting a widow is not entitled to credits for tiling land, or for other improvements, or for the payment of claims which could not be enforced to the prejudice of the heirs.

9. EVIDENCE—*express trust cannot be established by parol where Statute of Frauds is pleaded.* An express trust in land cannot be established by parol evidence in a proceeding where the Statute of Frauds is interposed as a defense.

10. LACHES—*when delay by heir will bar right to accounting for rents and profits.* A delay of upwards of fourteen years by an heir will bar his right to demand an accounting from the widow for rents and profits, in the absence of any excuse for the delay.

APPEAL from the Circuit Court of Champaign county; the Hon. FRANCIS M. WRIGHT, Judge, presiding.

This was a bill for partition, assignment of dower and an accounting of rents and profits, brought by appellee, against appellant and others, at the March term, 1895, of the Champaign circuit court. The bill alleges that one Levi Crane (or Crayne, as the name is variously given in the record,) died intestate in March, 1879, leaving him surviving his widow, (now Elizabeth Kyle,) the appellant, and his children, seven in all, of whom appellee is one; that at the time of his death he was seized in fee of the south half of the south-east quarter of section 22 and the south-west quarter of the south-west quarter of section 23, all in township 20, north, range 10, east, and of lot 4 of the north-east quarter of the south-east quarter of section 34, township 19, north, range 10, east; that the widow has, ever since the death of her husband, claimed the right to hold said lands as against the heirs, and has received all the rents and profits therefrom and used and appropriated them to her own use, refusing to account for them, but investing them in real estate and otherwise in her own name.

Appellant answered, admitting that she had occupied the lands in sections 22 and 23 as charged in the bill, but denying that she was liable to the complainant for rents and profits in any manner; alleging that said Levi Crane, in 1869, had executed a mortgage on the south-west quarter of the south-east quarter of said section 22 to Albion Crane, their son, to secure a note for $343.50; that said

note was not paid; that the said Albion Crane foreclosed said mortgage at the March term 1880, of the court, and that appellee was a party to that suit; that there was found due $553.90, and a decree of sale entered and the premises sold by virtue of such decree, and that she obtained the title thereto, by virtue of such sale, in 1881, and now claims the same in fee simple; that said Levi Crane, in 1876, had executed another mortgage on the south-west quarter of the south-west quarter of section 23 to the trustees of schools, to secure a note for $225; that said note was not paid; that said trustees, at the March term, 1881, of the court, foreclosed said mortgage, and that appellee was a party to that suit; that there was found due $272.03, and a decree of sale entered and the premises sold on October 18, 1881, and that thereafter she obtained the title thereto and now claims the premises as owner in fee; that said Levi Crane, in 1877, had executed a trust deed to Samuel H. Nickerson, as trustee for the National Life Insurance Company, on the south-east quarter of the south-east quarter of section 22, to secure a note for $400, payable five years after its date; that for several years after her husband's death she had paid the interest on said note and deed of trust, and finally had purchased the same and taken an assignment to herself, and was now the legal and equitable owner thereof, and that as such owner, and as owner of a dower interest in said land, she had remained in possession, as she had a right.to do; that out of the rents of said last named land she had made many valuable improvements, and paid all taxes, etc., and asks for the appropriate relief; and further alleging that she sets up and relies upon the several limitation laws of this State as a full and perfect defense to her in all of her rights before asserted, and especially upon the seven year limitation law, because she has paid the taxes, etc.

F. G. Jaques, one of the defendants, answered, claiming that he had recovered a judgment against William H.

Crane, one of the heirs, and that by virtue of said judgment the interest of said William H. Crane in all the lands mentioned had been sold, and that he had become the purchaser, and was now the legal owner of the undivided one-seventh of said lands in lieu of said William H. Crane.

To these answers the usual replication was filed. The bill was subsequently amended by leave of court, and it' was therein further alleged that it was the duty of said widow, out of the rents and profits of the land, to have paid any and all debts against the estate of said Levi Crane, and all mortgages, taxes and liens against said land, there being sufficient money to do so arising out of such rents and profits. The amendment set up a judgment allowed by the probate court to Benjamin W. Graham for $241.21, against the estate of Levi Crane, and the various mortgages, and averred that it was appellant's duty to have applied the rents, issues and profits, as fast as received, to the payment and extinguishment of said liens, and that appellant neglected her duty in this behalf and did not apply the rents to the payment of such debts, but wrongfully suffered the lands to be sold to satisfy said judgment and mortgages; that the money which appellant paid for her title was paid out of the moneys arising from the rents, etc., of all the lands; that the lands were bought by her for the common benefit of all the heirs of Levi Crane and the widow, and that all the interest of appellant in any and all of the lands, except her dower and homestead right, if any, was bought and paid for with the rents, etc., and prayed for accounting, cancellation of mortgages and of deeds to appellant, etc.

Appellant answered the amended bill, denying the duty alleged and that she ever had funds in her hands to pay said debts; alleging that the mortgage to Albion Crane was given to secure a debt due from Levi Crane to herself for money loaned him by her to purchase some of the lands, and that at the sale the same was bought for her without any other consideration than the money so

loaned her husband; that at the sale of the school mortgage she bought the land, using only money borrowed from the school trustees on a mortgage made by herself on other lands; that she paid off that mortgage out of the rents accruing to her from her own lands, as aforesaid; that as to the sale under Graham's judgment she did not have the money to buy the land, but procured one N. C. Ricker to buy it and hold it for her, giving him her note, which she had since paid off; denying also that any of these payments were made out of the rents, as charged; denying that she bought the said lands for the benefit of any one but herself; offered to account for the rents of the quarter subject to the Nickerson mortgage; alleged that she was left, as the widow of Levi Crane, in possession, with her homestead and dower rights unassigned; urged the decrees in the foreclosure cases as a bar to all further proceedings by the appellee as to the premises thereby sold. The answer specially pleads the Statute of Frauds and Perjuries, and its several provisions against parol trusts.

Replication was filed, and the cause referred to the master. The complainant afterward again amended her bill by striking out all reference to any alleged homestead of defendant in the premises.

The decree of the court finds that the money paid for the first forty-acre tract sold was in fact paid by Elizabeth Kyle out of the rents and profits of the land; that the same state of facts existed as to the other foreclosure sale; that the land was in fact purchased for the heirs of said Crane; that she must account for the rents and profits, with interest on the same; that she has dower and homestead in the premises; that the same have never been demanded, and appoints the necessary commissioners; decrees partition, cancellation of the mortgages and deeds, and refers the account to the master for statement. The commissioners set off appellant's dower and homestead, and reported the rest not susceptible of division.

The master, in stating his account, charged the appellant with the rents since the death of her husband, and interest on the same, amounting in the aggregate to $8333.95, and allowed her various credits, which embraced the mortgage debts and interest and costs of foreclosure, the Graham judgment, the cost of improvements she had made, insurance and taxes, $100 paid to William Crane on moneys claimed by him to be due from his father's estate, $25 for another claim of Gere, $400 paid for house and lot purchased by her in Champaign, and other items, with interest, amounting in the aggregate to $5365.31, and stating the balance due the heirs at $2968.64.

Objections were made and exceptions taken by both parties to the report, and the court on the final hearing sustained some of the exceptions and overruled others. The credit of $400 and interest for the house in Champaign was disallowed, and the decree found that she was entitled to the rental value of the homestead valued at $1000, estimated at five per cent on said $1000, for fifteen years, and one-third of the net balance of rent arising from rental value of said premises after the credits specifically allowed her, and after these allowances that she was indebted to the heirs in the sum of $944, and execution was awarded therefor. The decree approved the report of the commissioners and ordered *all* the premises to be sold, but that the premises set off to appellant as homestead and dower should be sold subject to the homestead and dower right, provided the bid upon each piece or parcel, except that portion set off as dower and homestead, should be equal to at least two-thirds of the valuation. From this decree this appeal is taken.

Nearly every important finding and decree of the court is assigned for error. In the account of the master there was a clerical error of $1000, made in adding together the amount of rents and the interest on same, the amount being that much too large, and on that account appellee entered a *remittitur* in this court of the judgment for $944.

When Levi Crane died, in March, 1879, he left very little personal property and his real estate was incumbered with mortgages. In the administration the widow's award was fixed at $300. What amount of this award she ever received does not appear from the record. She testified that all she received was "the grain in the field and the cows and stuff," and that she paid the funeral expenses and doctor's bills, amounting to $125, and a probated claim of John Gere for $25, out of what the law allowed her. She also testified that she hadn't a dollar in the world when Crane died. One of the exceptions to the master's account was, that he had not allowed her the amount shown to be due to her upon her widow's award. It is also shown by tax receipts introduced in evidence that she paid, February 23, 1880, taxes on the three forties, amounting to $25.40.

CUNNINGHAM & BOGGS, for appellant:

Parol evidence is not competent to establish an express trust, where the Statute of Frauds is pleaded. *Walter* v. *Klock*, 55 Ill. 362; *Morton* v. *Nelson*, 145 id. 586; *Stevenson* v. *Crapnell*, 114 id. 19.

It is essential to a resulting trust that the *cestui que trust* furnish money to make the purchase—the whole or some aliquot portion of the consideration. *Strong* v. *Messinger*, 148 Ill. 431; *Remington* v. *Campbell*, 60 id. 516; *Carpenter* v. *Carpenter*, 70 id. 457; *Perry* v. *McHenry*, 13 id. 238; *Furber* v. *Page*, 143 id. 623; *Stephenson* v. *McClintock*, 141 id. 604; *Walter* v. *Klock*, 55 id. 362; *Green* v. *Cook*, 29 id. 193.

The trust, if there ever was any, having been openly and notoriously denied by appellant for more than ten years before this suit was commenced, is now barred by *laches. Albretch* v. *Wolf*, 58 Ill. 187; *Breit* v. *Yeaton*, 101 id. 245; *McDonald* v. *Stow*, 109 id. 40; *Bates* v. *Gillett*, 132 id. 288; *Harris* v. *McIntyre*, 118 id. 276; *Carpenter* v. *Carpenter*, 70 id. 457; *Beach* v. *Shaw*, 57 id. 25; *Rogers* v. *Simmons*, 55 id. 82; *Dempster* v. *West*, 69 id. 613; *Follansbe* v. *Kilbreth*, 17 id. 522;

*Fowk* v. *Slaughter*, 65 Am. Dec. 698; *Reynolds* v. *Summer*, 126 Ill. 70.

C. H. KIENZLE, and THOMAS J. SMITH, for appellee:

The dower interest of a surviving husband or wife in his or her deceased wife's or husband's land is a mere expectancy, and rests in action only until it is assigned. *Blain* v. *Harrison*, 11 Ill. 384; *Bedford* v. *Bedford*, 136 id. 354.

The owner of the dower right is not entitled to one-third of the rents and profits of the land until after dower has been assigned. *Bedford* v. *Bedford*, 136 Ill. 354.

The widow is not entitled to credits for money expended on the land for improvements. *Hoots* v. *Graham*, 23 Ill. 81; *Wheeler* v. *Dawson*, 63 id. 54.

Mr. JUSTICE CARTER delivered the opinion of the court:

That appellant received $400 from her father's estate in her husband's lifetime seems to be uncontroverted, the appellee testifying to the same fact. Of this money she loaned $343.50 to her husband, the note and mortgage being dated January 18, 1869, and it seems that no interest was ever paid by him on this loan. The note and mortgage were made to her son Albion Crane, who, it is conceded, had no interest in the same, but merely held the same in trust for his mother. Within a year after Levi Crane's death Albion filed his bill to foreclose this mortgage, to which the appellee and all the heirs were made parties, and a sale was had on June 12, 1880, there being due, according to the decree of sale, the sum of $553.90. Albion Crane bought this forty-acre tract at the sale and afterwards assigned his certificate to appellant, who in due course received a deed for the land. The debt being hers, she paid nothing besides, except the costs, amounting to $58.05. She had an undoubted right to buy this tract of land so sold and take absolute title to herself. It is claimed by appellee that appellant had funds of the estate sufficient to pay off this mortgage, and should

have done so.  Whatever her duty might otherwise have
been, the evidence fails to show that she had received
sufficient funds to pay this debt, or any considerable part
of it, but that she had paid out for funeral expenses,
taxes and claims against the estate a large part of what
she had then received.  We are unable to see any rea-
son why her right and title to this tract, the south-west
quarter of the south-east quarter of section 22, are not
perfect.  No resulting trust arose in respect thereto in
favor of appellee and the other heirs.  The purchase
money belonged to appellant, and not to them.

The note of January 5, 1876, made by Levi Crane for
$225, payable in five years, to the trustees of schools, and
secured by mortgage on this same tract then already
mortgaged to Albion Crane, and also on the south-west
quarter of the south-west quarter of section 23, was fore-
closed after it became due after Crane's death, and a
decree of sale of the forty-acre tract in section 23 was
entered to pay the amount, $272.03, found due.  The ap-
pellee and all the heirs were made parties to that suit.
Appellant bought at the sale, but Graham, a probate
judgment creditor in the amount of $241.21, redeemed,
and as to a one-seventh interest therein one Jaques, by
virtue of a judgment held against W. H. Crane, one of
the heirs, also redeemed.  At the redemption sale of Gra-
ham, N. C. Ricker bought and received a certificate of
purchase for the tract, less the one-seventh interest re-
deemed by Jaques.  After obtaining his deed, and in 1889,
Ricker conveyed to appellant, but whether with or with-
out Jaques' interest does not appear.  Mrs. Kyle testified
that when she bought at the foreclosure sale under the
mortgage to the trustees of schools she had no money,
and instead of paying the purchase price in money she
gave her note to the trustees, and secured it by mort-
gage on the tract she had obtained by the sale under the
mortgage to her son Albion, and that when Graham's
redemption sale occurred, not having the money to buy

at that sale, she got Ricker to buy for her, and paid him interest on the amount for a number of years, completing the payment to him only a year before this suit was brought. This tract was the homestead, to the rents and profits of which, after the death of her husband, appellant, as his widow, was entitled so far as appellee was concerned, she, appellee, having arrived at her majority and married, and established a home of her own elsewhere, before the death of her father. The evidence shows that at Crane's death this forty acres was worth about the sum of $1000 only.

The court found, and we think correctly, that appellant had not abandoned her homestead but was entitled to it. But we think the decree was erroneous in setting off such homestead, inasmuch as she had, before the commencement of the suit, obtained the title in fee, and, so far as appellee is concerned, the homestead interest had become merged with the fee in appellant. Appellee had no interest in the rents and profits of the homestead tract from and after her father's death, and even if appellant used such rents and profits to pay the purchase price for the land at the judicial sale, or to re-pay borrowed money used for that purpose, that fact could create no interest in appellee nor give rise to any resulting trust in her favor. And, as we have seen, appellant acquired title in fee to the tract mortgaged to her son Albion, and she was, of course, after that time entitled to the rents and profits of that tract also. There was, therefore, but one other tract in the rents and profits of which appellee had any interest, and appellant offered in her answer to account for the rents and profits of that tract.

It was error to charge appellant with any rents and profits after she obtained her title to the tract sold to pay her mortgage debt, accruing from such tract. So, also, was it error to require her to account to appellee for any of the rents and profits of the homestead tract. By the statute the homestead continued after the death

of Crane for the benefit of his widow and of the children until the youngest should become twenty-one years of age; but this benefit did not extend to appellee, who was no longer a member of the family but had a family of her own. The homestead estate devolved upon the widow, by operation of law, *eo instanti* upon the death of her husband. (*Jones* v. *Gilbert,* 135 Ill. 27.) Nor was appellant entitled to any credit for taxes, as allowed by the court, which she had paid on said homestead tract, nor upon the other tract after she acquired title. It follows, also, that the decree is erroneous in directing the sale of these two tracts of land, or any part of them, subject to homestead, or otherwise. It therefore becomes unimportant to consider the contention of appellant that it was erroneous to order the sale of that part set off as a homestead, subject to the estate of homestead.

It is claimed, however, that appellant bought in the land, when it was sold, for the benefit of her children as well as of herself, and that she had so stated at the time and had practically so admitted when called as a witness by the complainant. Inasmuch, however, as the Statute of Frauds is pleaded, no express trust could be established unless manifested and proved by some writing signed by her. It is not pretended that there was any written evidence of the trust. Nor do we think that there was sufficient evidence to establish an express trust if the Statute of Frauds had not been pleaded. It is apparent from the testimony of appellant that she was an ignorant woman, and that all that she meant by her statements as a witness that she bought the land for herself and children was, that her children, as her only heirs-at-law, would get it at her death. But taking her testimony altogether, it is clear, we think, that she bought the land with the intention of acquiring title thereto in fee in herself.

It is, however, contended, that appellant occupied a fiduciary relation toward appellee, and that it was her

duty to apply the rents and profits to the discharge of the incumbrances upon the property, but that, taking advantage of her position and failing in this duty, she bought the land and undertook to acquire title thereto in her own name, and that a constructive trust arises in favor of the heirs, and that a court of equity will hold her to be a trustee of the legal title for the benefit of appellee and the other heirs. As before shown, however, it was not her duty to account to appellee for the rents and profits, except as to the tract respecting which she was ready and willing and offered to account; and there is no sufficient proof in the record to show that, as to the rents and profits accruing from said last named tract, any part of them was used in the purchase of either of the first mentioned tracts. Even if any of the heirs other than appellee were entitled to any interest in the rents and profits of the homestead tract, they have made no complaint, appellee being the only one of the seven children to make any complaint of the acts of their mother in dealing with the property. Besides, it is not made to appear whether or not there was anything left of such rents and profits after deducting the necessary expense of the support and maintenance of the widow and her minor children, if any of them were minors. There is no sufficient evidence from which to deduce a constructive trust.

If appellee were entitled to an accounting for the rents and profits accruing from the tract of land purchased by appellant under the sale under the mortgage or deed of trust to Albion Crane before she obtained title thereto, all such right is barred by lapse of time and *laches*, as she delayed upwards of fourteen years in bringing her suit.

The court properly struck out the allowance to appellant, as a credit, of the money paid by her, and the interest thereon, for the house and lot in Champaign. Appellee makes no claim to that property, and it clearly appears that it belongs to appellant. Nor do we think

the credit of $100 allowed to appellant which she paid on the alleged claim of William Crane was properly allowed. The evidence does not show that it could have been enforced in any way to the prejudice of appellee. Nor should appellant have been allowed anything for tiling the land or other improvements made by her. (*Wheeler* v. *Dawson*, 63 Ill. 54; *Bedford* v. *Bedford*, 136 id. 354.) The decree was also erroneous in allowing her a share of the rents accruing from the forty-acre tract to which she has no title for or on account of her dower interest therein. As she had made no demand she was not entitled to any part of the rents and profits, but they belonged to the heirs. *Atkin* v. *Merrell*, 39 Ill. 62; *Strawn* v. *Strawn's Heirs*, 50 id. 256; *Rawson* v. *Corbett*, 150 id. 466; *Bedford* v. *Bedford*, *supra*.

The decree of the circuit court is reversed and the cause is remanded, with directions for a re-statement of the account and the assignment of dower in the land, except the two tracts belonging to her, and for a decree in conformity with the views hereinbefore set forth.

*Reversed and remanded.*