Rhodes v. Rhodes.

---

## William P. Rhodes and Harriet Rhodes v. John B. Rhodes, Jr., Fannie L. Rhodes, Thomas B. Rhodes and Emma E. Rhodes.

1. RENTS AND PROFITS—*In Partition.*—A proper division of rents and profits is germane to a bill for partition, and relief on that subject may be granted by the decree in the partition suit.

2. EQUITY PRACTICE—*Jurisdiction—When Retained for All Purposes.*—When a court of equity has obtained jurisdiction for one pur-

pose it will, under proper pleadings and prayer, proceed to grant complete relief touching the subject-matter of the suit, even if it involves relief which could have been had at law.

3. PARTITION—*Rents and Profits Determined in—By Arbitration.*— The fact that the parties in a suit for partition resort to arbitration for the purpose of ascertaining what sum is due from one of the parties for his use of the premises is still germane to the suit for partition, and the court will enforce the payment of the sum so ascertained, upon its being brought before the court by a proper supplemental pleading.

4. PRACTICE—*Interval Between Computation and Decree—Antedating Decrees.*—Where there is an interregnum between the time fixed in a computation and the date of the entry of a decree or judgment thereon, he who wishes the intermediate time covered by the judgment should specifically ask the trial court to act on the subject, and if he does not he is not in a position to complain of the omission.

**Bill for Partition.**—Trial in the Circuit Court of Carroll County; the Hon. JAMES SHAW, Judge, presiding. Hearing and decree for complainants. Appeal by defendants. Heard in this court at the May term, 1898. Affirmed. Opinion filed September 26, 1898.

## STATEMENT.

This is a writ of error sued out by William P. Rhodes and his wife to review a partition decree so far as it required William to pay certain sums to his co-tenants for his use of the premises. The original bill was filed by defendants in error for partition of real estate in the city of Savanna, in Carroll county, and it prayed for an accounting of rents and profits against William, who had been exclusively in possession since August 8, 1894, and who owned a two-thirds interest. Afterward the parties agreed to submit the question of rents to arbitration, and complainants asked leave "to amend their bill instanter so far as it has referred to rent," which leave was granted. They then filed a paper which stated they amended their bill "by striking out the last eight lines on page seven, and the first thirteen lines on page eight." The record contains nothing from which it can be determined what was stricken out, but the abstract says that the amendment struck out all reference to possession, rents and an accounting. Arbitrators were chosen and each side produced testimony before them, and an award was made. William and his wife then filed an amendment

to their answer in which (without mentioning the arbitration) they stated that William had been in exclusive possession ever since August 8, 1894, and owed rent to his co-tenants and wished to pay them, but could not settle with them as to the amount; and said answer asked the court to adjudicate upon the rents in this suit.   They then filed a cross-bill setting up the several interests of the parties in the realty, and said facts relative to possession and rents, and prayed for a decree determining what amount of rent William owed his co-tenants, which amount when ascertained he offered to pay.   Exceptions were filed and sustained to said amendment to the answer.   Demurrer was filed and sustained to parts of said cross-bill, and to the part relative to the rents the arbitration was pleaded, and the plea was set down for hearing and held good.   The cross-complainants, after the court had held the plea good, but before the decision had been entered of record, asked leave to withdraw their cross-bill, but leave was denied.   Cross-complainants then replied to said plea; defendants demurred to said replication; the court sustained the demurrer, and cross-complainants elected to stand by their replication.   Complainants also filed a supplemental bill setting up the arbitration as to rents, and prayed that the sums fixed by the arbitrators be decreed to be paid the complainants, and that the court award them rent for the use of the premises by William from the date of the award to the entry of final decree, at $120 per month, in accordance with the award.   Defendants demurred to said supplemental bill; the demurrer was overruled and they elected to abide by their demurrer. There were amendments to the pleadings bringing in a lot in Mt. Carroll, and the decree awarded rents as to said lot, but that action is not questioned here.

When the cause came on for hearing complainants read in evidence the submission to arbitration and the award. Defendants in error made many special objections thereto, which the court overruled.   Defendants offered a record of the Circuit Court of Carroll County on the common law side, showing complainants had entered a motion for judg-

ment on said award, which had been denied; and that William had then entered a motion at the same time to set aside and quash the award, which was also denied "for want of jurisdiction in this cause to hear and determine the same." Other proofs were heard. On April 21, 1897, a decree was entered which was not only final as to the shares the parties had in the real estate, but also as to the sums William was to pay his co-tenants as rent. No appeal was taken from that decree. At the second term thereafter plaintiffs in error moved to modify the decree on the ground that the amounts awarded against William were unjust to him. This motion was heard and denied. They then offered to show William had expended certain sums for repairs and taxes, but the court sustained objections to the offer.

A. F. WINGERT and HENRY MACKAY, attorneys for plaintiffs in error.

D. S. BERRY and RENNER & SMITH, attorneys for defendants in error.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

A proper division of rents and profits is germane to a bill for partition, and relief on that subject will be granted by the decree in the partition suit. 3 Pomeroy's Equity Jurisprudence, Sec. 1389. In Howey v. Goings, 13 Ill. 95, the court said: "The remedy in equity is often more complete than at law; as, where one tenant in common has been in the exclusive reception of the rents and profits, on a bill for partition and account, the latter also will be decreed." Hawkins v. Taber, 47 Ill. 459; Mahoney v. Mahoney, 65 Ill. 406; Roberts v. Beckwith, 79 Ill. 246. That the whole subject of rents is germane to a suit in equity for partition is manifest from Kyle v. Wills, 166 Ill. 501. Moreover, the rule is as applicable in a partition case as in any other, that a court of equity, having obtained jurisdiction for one purpose, will, under proper pleadings and prayer, proceed to grant complete relief touching the subject-matter of the suit,

even if that involves relief which could have been had at law. McDowell v. McDowell, 114 Ill. 255. Further, our partition statute (Sec. 15) requires that the court in a partition suit shall ascertain and declare the rights, titles and interest of all the parties to the suit, and give judgment according to their rights. The supplemental bill in this case sought to have relief granted upon the question of rents by asking the court to enforce the award. The arbitration and award were fully and exactly pleaded in said supplemental bill. The court having overruled the demurrer of appellants thereto, they abided by their demurrer. They thereby confessed all that was well stated concerning said arbitration and award. We are of opinion that the fact that the parties had resorted to arbitration as an inexpensive method of ascertaining what sum was due from William P. Rhodes for his use of the premises, did not withdraw the subject of compensation to his co-tenants for the use of the premises from the operation of the rules we have stated, but that it it was still germane to the suit for partition that the court should enforce the payment of the compensation so ascertained upon its being brought before the court by a proper supplemental pleading.

Again, appellants did not stand by their application to dismiss their cross-bill asking a decree as to rents, but after that application was denied, filed a replication to the plea by which the arbitration had been set up. We think the filing of this replication a waiver of the application for leave to withdraw the cross-bill. The court sustained a demurrer by appellees to said replication, and appellants elected to stand by said replication and assign said ruling for error. A general replication to a plea in chancery is sufficient (Story's Equity Pleading, Secs. 877, 878), and the demurrer should have been overruled; but appellants can only ask that the same result be reached as if the replication had been sustained. The effect of the replication was to put in issue the arbitration and award. Those instruments were offered in evidence and justified a decree under the plea as well as under the supplemental bill.

While it is clear the court erred in some of its ruling upon the pleadings, we are unable to say that the plaintiffs in error have been injured thereby. William P. Rhodes was seeking by his amended answer as well as his cross-bill to have his liability to his co-tenants for rents adjudicated in this suit, and that result has been reached. He can no doubt be heard to question here the correctness of the amount awarded as rent, but, in view of the pleadings filed, we think he can not dispute the jurisdiction of the court to act upon the subject of the sum he ought to pay his co-tenants for rent; and an error in pleading should not work a reversal unless he has been harmed thereby. Whether the court adjudged the proper amount against him is a question of evidence.

We conclude the several objections interposed to the submission and award when offered in evidence were not well taken. If the subject of rents was withdrawn from the dominion of the court by the first amendment to the bill (which we can not determine from the record, as it does not show what was stricken out) jurisdiction thereof was restored by the subsequent pleadings of both parties. William joined in the submission to arbitration, and was present and a witness at the hearing before the arbitrators. While he made many special objections to the submission and award when offered in evidence he did not make a general objection thereto, nor did he object on the ground it was not competent evidence against him as tending to prove the value of the use of the premises. As the submission bore his signature and he therein agreed an award as to rents should be made in a certain way, and this was followed by an award made in the manner he had contracted for, we see no reason why the submission and award were not competent instruments of evidence against him as tending to show what was the rental value of the premises while he occupied them. The mere denial of a motion for judgment on the award, entered upon the law side of the court, without summons, service or pleadings, did not prevent its use as evidence tending to show the rental value of the

premises.  One objection interposed was that the award was inequitable and unjust on its face, but no defect of that kind has been pointed out.  Defendants in error did not offer any proof to show the award was unjust or unfair, or that the premises were not worth the rental fixed by the arbitrators, or that the arbitrators had in any respect departed from the authority conferred upon them.  The award was signed by but two of the three arbitrators, but that was provided for in the submission.  The court, in the absence of any other evidence of the rental value of the premises, found the sums named in the award " true, just and equitable as rent due the respective parties."  We conclude the submission and award sufficient evidence to support a decree for the sums named therein.

The award was dated November 11, 1896, and after fixing the amounts William should pay his co-tenants as rent to that date, it further recited:  " We find $120 per month is a fair and reasonable rental for said property."  The proof showed William continued to occupy all the premises till April 1, 1897, when he vacated part thereof and served notice of such vacation on his co-tenants.  The decree charged him with rent from November 11, 1896, to April 1, 1897, at $120 per month, requiring him to pay his co-tenants their respective proportions of the rent at that rate for that period.  We think this was justified by the award and proof.  Plaintiffs in error further complain because the court did not fix the rent William should pay from April 1st, to April 21st, the date of the decree.  There was no proof of the rental value of the part he retained after April 1st, and there was therefore no basis for a decree covering that period. It often happens there is a slight interregnum between the time fixed in a computation and the date of the entry of a decree or judgment thereon.  He who wishes the intermediate time covered by the judgment should specifically ask the trial court to act on the subject, and if he does not, he is not in a position to complain of the omission.  This was not done here.

The only ground upon which the claim is here rested that

the sums allowed against William for rent are unjust, is that
the appraisement made under the decree of April 21st, and
the amount realized at the master's sale, are each so low
that it now appears that the rents so decreed to be paid are
twenty-five to thirty per cent per annum upon the amounts
of the appraisement and sale. The correctness of the
decree, however, is to be tested by the proof before the
court at the hearing. William knew as well then as later
what the use of the premises was reasonably worth, and
he did not produce or offer to produce any proof that the
reasonable rental was any lower than the sum found by
the arbitrators. Again, the appraisement was filed before
the end of the term at which the decree of April 21st was
entered. If it gave him new light upon the true value of
the premises he might have moved to vacate or modify the
decree before that term ended, and the court then had juris-
diction to grant such motion if a proper showing had been
made. But he waited until the second term thereafter
before he brought the matter to the attention of the court,
and it then had no power to alter the decree. Moreover,
when this application was made and heard in November
and December, 1897, he offered no proof to show the rent
allowed was in fact excessive. He made no offer to show
what the rental value of said premises was or the rental
value of other like property. It may be there were special
circumstances which gave this property a special rental
value at the time William occupied it without enhancing its
selling value; or it may be the parties have permitted this
property to be sold for less than it was really worth. We
are of opinion the court at that time had no power to mod-
ify the decree of April 21, 1897, and that no showing was
made which required or justified a modification.

Thereafter, in December, 1897, William offered to prove
to the court that he had paid $30.23 for repairs upon the
premises before the bill was filed, and $85.10 for taxes for
1896, and $92.59 for taxes for 1897. This was not accom-
panied by any motion for any relief of any kind on that
subject. We fail to find any pleading by William in which

he set up that he had made repairs or paid taxes, or in which he asked any decree or allowance therefor. Mahoney v. Mahoney, *supra*.    There being neither pleading nor motion upon the subject, no error was committed in declining to hear the evidence at that time.

The decree of the court below will be affirmed.