ADELBERT KULLMAN, Respondent, *v.* HENRY D. COX, Appellant.

1. REAL PROPERTY — MARKETABLE TITLE — WHEN TITLE IS IN VENDOR PERSONALLY AND NOT AS TRUSTEE. The title to real property is not unmarketable upon the ground that the vendor acquired it as trustee for his children and not personally, where he derived it through the foreclosure of a purchase-money mortgage given by his wife who owned the property and died intestate, leaving children, and on account of his default in paying the interest, which he was unable to pay, and without any collusion, was foreclosed, and bid in by the mortgagee for an amount rep-

resenting the value of the property, the decree providing that any party might purchase at the sale, and was by him conveyed to the vendor, since his former relation to the property and the children did not prevent him from personally acquiring the title of the mortgagee, which was perfect.

2. WHEN EVIDENCE THAT PROPERTY BELONGED TO VENDOR IS HARM-LESS. Testimony of the vendor to the effect that the property was in the first instance in reality his, and that he furnished the cash paid when the deed was taken in the name of his wife, is not ground for reversing a judgment decreeing the specific performance of a contract for its purchase where the case has been disposed of in the courts below upon the assumption that his wife was the owner of the property at the time of her death.

*Kullman* v. *Cox*, 42 App. Div. 620, affirmed.

(Argued May 14, 1901; decided June 11, 1901.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered July 15, 1899, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to compel the specific performance of a contract for the purchase of real estate.

The facts, so far as material, are stated in the opinion.

*Francis B. Chedsey* for appellant. As guardian in socage there devolved upon the plaintiff the custody of the infants' interests in the real estate with its consequent responsibilities. (*Boyer* v. *East*, 161 N. Y. 580.) The plaintiff, as the tenant for life of the property having the possession and use thereof, was bound to pay from his own means the interest on the mortgage as it became due. (*Moseley* v. *Marshall*, 22 N. Y. 201.) The plaintiff cannot hold as his own the estates of his infant children, the legal title to which he has acquired, if at all, only by reason of a default wholly his own. (Perry on Trusts [5th ed.], § 222; *Bennett* v. *Austin*, 81 N. Y. 308; *Ten Eyck* v. *Craig*, 62 N. Y. 419.) The judgment is erroneous in that it rests upon disputed questions of fact involving the validity of the title tendered. (*Brokaw* v. *Duffy*, 165 N. Y. 391; *Greenblatt* v. *Hermann*, 144 N. Y. 20; *Fleming* v. *Burnham*, 100 N. Y. 10; *Abbott* v. *James*, 111 N. Y. 676; *Vought* v. *Williams*, 120 N. Y. 257; *Heller* v. *Cohen*, 154

N. Y. 299.) The defendant in this action having notice that the plaintiff purchased the property for his own account, and that he denies that his children have any right or interest in it, could not, if he completed his purchase, hold the property free from the rights and interests of those children. (*O'Don-ohue* v. *Bois*, 159 N. Y. 102; *Fleming* v. *Burnham*, 100 N. Y. 10; *People* v. *O. B. of S. B. B. Co.*, 92 N. Y. 98.)

*Samuel Untermyer* and *Moses Weinman* for respondent. The title tendered by the plaintiff is a good marketable title. Hupfel, the mortgagee, acquired a good title upon the fore-closure, and the plaintiff was not disqualified by his guardian-ship in socage to purchase the property from Hupfel. (*Boyer* v. *East*, 161 N. Y. 580; *Corbin* v. *Baker*, 56 App. Div. 35.)

Parker, Ch. J. This record as it comes to us entitles the plaintiff to an affirmance of the judgment, for the facts, which we must accept, are contained in the findings of the trial court. Every fact therein found has some evidence to sup-port it — indeed every material fact but one is established by uncontradicted evidence, and that one relates to the value of the property at the time of the foreclosure sale ; the affirmance by the Appellate Division, therefore, makes those facts con-clusive upon this court. The question of law presented is whether the facts established title in the plaintiff personally or in him as trustee for his children. The premises were con-veyed to plaintiff's wife by one Hupfel in February, 1886, to whom she gave a purchase-money mortgage for $3,800. In April, 1895, plaintiff's wife died intestate leaving her surviv-ing her husband and four minor children. The amount then due and unpaid on the purchase-money mortgage was $3,600. The plaintiff was not able to pay the semi-annual interest due on July 1st, 1895, nor were any of his children able to pay the same, and the mortgagee, Hupfel, having failed to receive his interest after demand made, brought an action to foreclose the mortgage, which resulted in a judgment of foreclosure and sale, in which it was provided that any party to the action might purchase at the sale, and under

it Hupfel purchased the property on the 16th day of January, 1896, for $4,000. "The price realized on the foreclosure sale at least equaled what the property was worth at that time." Shortly thereafter the referee duly conveyed the premises to Hupfel. "There was no collusion between Hupfel and the plaintiff herein in instituting and prosecuting said foreclosure suit. The foreclosure action was instituted and prosecuted by said Hupfel in entire good faith for his own benefit, because neither Adelbert Kullman (the plaintiff) nor any of the owners of the property paid, or were able to pay, the interest due on July 1st, 1895." Shortly thereafter Hupfel conveyed the premises to this plaintiff. and accepted in part payment therefor a purchase-money mortgage for $3,800.

Each one of these facts was established by uncontradicted evidence with the exception of the one which in effect asserts that the property was not at the time of the sale worth more than the amount paid by Hupfel. There was a conflict of testimony as to value, but there was evidence fully justifying the finding made. It is not pretended that there was any defect whatever in the foreclosure proceedings, and it is apparent, therefore, from the facts found, that Hupfel acquired a perfect title to the premises which he could vest in any one to whom he saw fit to convey them, and which he did vest in this plaintiff by his conveyance to him. Indeed, no one pretends that Hupfel did not acquire a good title free and clear from all claims that the former owners had in the property prior to the sale under the judgment of foreclosure ; nor is it pretended that Hupfel could not convey as good a title as he had to any one else. But instead it is suggested that the plaintiff's former relation to the property and its owners disabled him from acquiring the title which Hupfel concededly had. No authority is, or can be, cited in support of that position, and one difficulty with the reasoning by which it is sought to be established is that it proceeds upon an erroneous assumption of fact, namely, that the plaintiff prior to the foreclosure failed to discharge a duty he owed

to the owners of the property, that of paying the interest on the mortgage. In the first place it may well be doubted whether it was his duty to pay the interest had he the money with which to pay it in view of the finding that the value of the property did not exceed the amount of the judgment, for it necessarily follows that the interest of the children had no value whatever, and even a tenant by the curtesy is not called upon to pay money for the protection of a thing that is without substance and is valueless. But, aside from the fact that the interest of the children in the property was without value at that time, the plaintiff could not pay the interest because he did not have the money with which to pay it, and so the trial court found upon evidence to support it; and, indeed, it should be said that there is not a suggestion in the record to the contrary. It follows, therefore, that the foreclosure, which was neither suggested nor instigated by the plaintiff, was not due to any fault on his part. That being so, the plaintiff had the same right as any other person to purchase the property of Hupfel when he found himself in such improved financial condition as warranted him in attempting its acquisition.

The plaintiff's testimony to the effect that the property was in the first instance in reality his, and that he furnished the $200 that was paid on account of the purchase price at the time the deed was taken in the name of his wife, does not call for reversal of the judgment, inasmuch as the case has been disposed of in all the courts upon the assumption that the plaintiff's wife was the owner of the property at the time of her death.

The judgment should be affirmed, with costs.

CULLEN, J. (dissenting). This action was brought, vendor against vendee, to compel the specific performance of a contract for the purchase of real property in the city of New York. The appellant defended on the ground that the plaintiff's title was unmarketable. The objection to the title is based on the following facts: Anna Maria Kullman, the wife of the plain-

tiff, at the time of her death, which occurred April 22nd, 1885, was seized in fee of the premises subject to a mortgage executed by herself and her husband to one Adolph G. Hupfel to secure the payment of $3,600 on January 1st, 1889, with interest payable semi-annually on the 29th days of June and December, which mortgage contained a provision that in case of thirty days' default in the payment of the interest the mortgagee might elect that the whole principal sum should become due. Mrs. Kullman died intestate, leaving her surviving the plaintiff and four children, her only heirs at law. At the time of their mother's death these children were infants, the oldest having been born in 1866 and the youngest in 1875. The plaintiff has remained in continuous occupation of the premises from his wife's death to the trial of the action. The semi-annual interest falling due on June 29th, 1885, was not paid. On September 17th, 1885, the mortgagee instituted an action to foreclose the mortgage, alleging the default in the June interest and electing that the whole principal sum should become due. Judgment was entered in the action on December 19th, 1885. Under that judgment the property was sold for the sum of $4,000 on January 22nd, 1886, to the mortgagee, who subsequently received a deed therefor from the referee. The property was then conveyed by the mortgagee to the plaintiff by deed dated February 1st, 1886. These two deeds were recorded on the same day in the registrar's office. On his purchase the plaintiff executed a new mortgage to Mr. Hupfel for $3,800. The appellant claims that on these facts the plaintiff's children have an equitable claim to the premises subject to the life estate of their father. On the trial, both the plaintiff and the mortgagee testified as witnesses. The trial court found that the plaintiff was unable to pay the interest which accrued on June 29th, 1885, and that the foreclosure was prosecuted and the sale had in good faith without any collusion between the plaintiff and the mortgagee. Judgment was entered that the defendant specifically performed his contract. This judgment has been affirmed on appeal by a divided court.

The defendant was entitled under the contract to a market-able title free from doubtful questions of fact or law. (*Bro-kaw* v. *Duffy*, 165 N. Y. 391.) In that case it was held that testimony taken on an inquisition tending to show that a grantor through whom the vendor traced title was at the time of his grant of unsound mind, was sufficient to render the title unmarketable, though no proof of the insanity of that grantor was produced on the trial of the action and the pro-ceedings on the inquisition had been set aside. The learned trial court has found that there was no collusion between the plaintiff and the mortgagee, and that finding is conclusive upon us. This is not sufficient, however, under the case cited, for if the circumstances were such that the defendant's title might hereafter be impeached or defeated by a contrary determination of the question of fact presented by those cir-cumstances, then the title offered was not marketable. The trial court committed a fatal error in the admission of evi-dence on which its finding of facts was based. The plaintiff was allowed to testify over the defendant's objection and exception that the property was in reality his; that he paid the consideration on its original purchase and had the convey-ance made to his wife. The statute is explicit that in such cases there is no title, legal or equitable, in the person who pays the consideration. (1 R. S. p. 78, § 51.) The fact did not in any way diminish or vary the plaintiff's duty to his infant children who inherited the remainder subject to his life estate. There is this further to be said: In any action that might hereafter be brought by the children against the appel-lant, if he should take title, the plaintiff would not be a compe-tent witness to testify as to personal transactions with his deceased wife.

The record presents a still more serious objection to the title offered, a question of law, to say the least, of very doubt-ful determination and one which should not be decided except in an action to which the remaindermen are parties. "A tenant for life is a *quasi* or implied trustee for the remainder-man and is accountable for the highest good faith." (Perry

53

on Trusts, §§ 540, 549.)   As tenant for life the plaintiff was
bound to keep down and pay the interest. (Story's Equity,
§ 488; *Moseley* v. *Marshall*, 22 N. Y. 201.) · The interest
for which the mortgage was foreclosed became due over two
months subsequent to the wife's death, and there is, therefore,
no question of accumulated arrears of interest, the liability
for which as between life tenant and remainderman has been
the subject of conflicting decisions in England.   The plaintiff
having accepted the inheritance and having enjoyed the pos-
session of the premises was bound to pay this interest.   The
trial court found that he was unable to pay it.   This may
relieve him from the imputation of moral fault, but it in no
way affects the fact that the mortgage was foreclosed and the
mortgaged property sold solely by default of the plaintiff in
the performance of his legal obligation.   If the foreclosure
and sale were without collusion, doubtless the mortgagee
acquired a perfect title by the deed given to him on the sale.
But the question is whether, when the plaintiff purchased
from the mortgagee and repossessed himself of the title, such
title did not instantly inure to the benefit of the remainder-
men.   Of course, the general rule is that where a trustee has
properly sold property to a third person in good faith and
without collusion, he is not precluded from subsequently buy-
ing the property from the purchaser.   To make that rule
applicable, the original sale of the property must have been
without fault on the part of the trustee.   " Wherever a trus-
tee is guilty of a breach of trust by the sale of the trust prop-
erty to a *bona fide* purchaser, for a valuable consideration
without notice, the trust in the property is extinguished.   But
if afterwards he should repurchase or otherwise become enti-
tled to the same property, the trust would revive and reattach
to it in his hands ; for it will not be tolerated in equity that a
party shall, by his own wrongful act, acquire an absolute title
to that which he is in conscience bound to preserve, for
another.   In equity, even more strongly than at law, the
maxim prevails, that no man shall take advantage of his own
wrong." (Story's Equity, § 1264; *Bovey* v. *Smith*, 1 Vern.

84.) In acquiring the property from the mortgagee, the plaintiff put a new incumbrance upon it greater in amount by two hundred dollars than that to which it had been previously subject. There, therefore, arose no claim upon his part for contribution from the remainderman. It is also to be observed that the defendant was guardian in *socage* of his infant children, and thus he occupied a double relation of trust and confidence to them. It is unnecessary, however, to pursue the discussion further. It is sufficient to say that the plaintiff's title presents a question of law, the resolution of which in favor of the plaintiff is by no means certain.

The judgment appealed from should be reversed and a new trial granted, costs to abide the event.

Martin, J. (dissenting). The plaintiff, as owner of a life estate in the property in question, of which his children were remain .ermen, of whom he was guardian in socage, plainly occupied towards them the relation of trustee. (*Warren* v. *Union Bank of Rochester*, 157 N. Y. 259.) It was his duty to pay the interest upon the mortgage thereon. (*House* v. *House*, 10 Paige, 158, 164; *Bell* v. *Mayor, etc., of N. Y.*, Id. 49; *Moseley* v. *Marshall*, 22 N. Y. 201.) He failed, and the premises were sold by reason of his default. Almost immediately he repurchased them of the mortgagee, by whom they were bid off upon the sale. Whether this transaction was in good faith or resulted from a collusive violation of his duties as trustee was a question of fact. In this case it has been decided in his favor, so that, if there were no other parties interested, the judgment herein would be conclusive upon the question and the title would be clearly marketable. But when that transaction occurred his children, the remaindermen, were infants, and the infancy of some of them continued until about the time of the commencement of this action. None of them were parties to this or shown to have been parties to any other action where the question of the validity or good faith of that transaction was involved. Nor was there any proof that the plaintiff has in any way acquired or become possessed

of their interest in the premises, unless under such foreclosure, sale and repurchase which may ultimately be declared void as to them. The defendant was entitled to a marketable title, and cannot properly be required to accept any other. " A title open to a reasonable doubt is not a marketable title. The court cannot make it such by passing upon an objection depending on a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right was vested. He would not be bound by the adjudication and could raise the same question in a new proceeding." (*Fleming* v. *Burnham*, 100 N. Y. 1, 10 ; *Brokaw* v. *Duffy*, 165 N. Y. 399.) " A purchaser ought not to be compelled to take property, the possession of which he may be obliged to defend by litigation. He should have a title that will enable him to hold his land free from probable claim by another, and one that if he wishes to sell would be reasonably free from any doubt which would interfere with its market value. If it may be fairly questioned, specific performance will be refused." (*McPherson* v. *Schade*, 149 N. Y. 16, 21 ; *Jordon* v. *Poillon*, 77 N. Y. 521 ; *Vought* v. *Williams*, 120 N. Y. 253 ; *Shriver* v. *Shriver*, 86 N. Y. 575 ; *Heller* v. *Cohen*, 154 N. Y. 299, 306 ; *Dyker Meadow L. & Imp. Co.* v. *Cook*, 159 N. Y. 7, 15.) The plaintiff was bound to show that the title tendered was good, or at least marketable as against *all the world*. (*Simis* v. *McElroy*, 160 N. Y. 156, 162.) This it seems to me he has failed to do. If the defendant is required to accept the title tendered, possessing as he does knowledge of the transaction of the plaintiff in obtaining the title to property held in trust for his children, what assurance has the former that an action may not be commenced against him by the remaindermen to establish their title to the property and the plaintiff be required to defend it? Again, what assurance has the defendant that even the plaintiff, if called as a witness in such an action, would not give testimony to secure to his children the title to the property for which he had already been paid? Certainly the judgment in this action would be no estoppel to his giving such testimony, and if willing to

deprive them of their rights under their mother's will in the manner stated, might it not well be that after obtaining from the defendant the consideration for the premises he might be equally willing to deprive him of the property and secure it for his children?

Under these circumstances and under the principles established by the decisions of this court, it seems to me plain that the defendant ought not to be compelled to accept the title offered, and that the judgment appealed from should be reversed and a new trial granted, with costs to abide the event.

GRAY, O'BRIEN and WERNER, JJ., concur with PARKER, Ch. J.; MARTIN and CULLEN, JJ., read dissenting opinions; LANDON, J., concurs with CULLEN, J.

Judgment affirmed.