ANNA E. GALFORD *et al.* Appellants, *vs.* AMY A. EASTMAN *et al.* Appellees.

*Opinion filed October 26, 1909.*

1. EQUITY—*fraud and injury must concur to furnish a ground for judicial action.* A court of equity does not sit for the purpose of enforcing moral obligations or correcting unconscientious acts which are followed by no loss or injury.

2. REAL PROPERTY—*when purchaser is entitled to protection as against alleged trust.* While a father, having a life estate in land in which his children own the fee under an unrecorded deed, will not be permitted to fraudulently manipulate the title, by redeeming from mortgages or otherwise, so as to defeat the children's rights, yet if neither he nor his children are able to redeem from a mortgage given by their grantor, and the father, after making every effort to redeem, succeeds, after the period of redemption has expired, in acquiring the certificate of purchase and a master's deed by re-mortgaging the land for the necessary amount but is unable to pay the interest and is compelled to sell the land, which fails to bring the amount of the mortgages and accrued interest, purchasers from his grantee will be protected against any alleged trust in favor of the children arising from the fact of the father's acquiring title for himself, although the deed creating the estate in the children was recorded before the father conveyed the land.

APPEAL from the Circuit Court of Logan county; the Hon. T. M. HARRIS, Judge, presiding.

This was a bill for the partition of certain lands located in Logan county, filed to the June term, 1908, of the circuit court of said county, by Anna E. Galford, William V. Galford and Gilbert Haven Galford against Amy A. Eastman, S. Frank Eastman, James T. Galford, Annie B. Gal-

ford, Thomas J. Henneberry, Honor V. Henneberry, Mary D. Brown, Henry B. Brown, and other parties not affected by this appeal. Answers and replications were filed and Mary D. Brown filed a cross-bill. A hearing was had before the chancellor, and a decree was entered dismissing the original bill for want of equity, and establishing, under the prayer of the cross-bill, the title to the premises sought to be partitioned in Mary D. Brown in fee, and the complainants in the original bill have prosecuted an appeal to this court.

It appears from the pleadings, evidence and findings incorporated in the decree, that Annie B. Galford took title in fee, by devise from her father, to the following described premises: The west half of section 26, (except church lot,) containing 318.16 acres; also the west half of the north-east quarter of section 26; also lot 5 in section 23, containing 43.66 acres,—all of said lands being in township 19, north, range 4, west of the third principal meridian, Logan county, Illinois; that the said Annie B. Galford married James T. Galford; that as the result of the said marriage there were born to said Annie B. and James T. Galford five children, viz.: Anna E. Galford, William V. Galford, Gilbert Haven Galford, Amy A. Galford (now Amy A. Eastman) and James Galford; that on April 14, 1883, Annie B. Galford executed and delivered to James T. Galford a deed for said premises, conveying the same to James T. Galford for life and the remainder in fee to their five children; that said deed was held by said James T. Galford without recording until December 3, 1895, when the same was filed for record and recorded in the recorder's office in Logan county; that on July 14, 1883, Annie B. Galford and James T. Galford gave to Kate C. Bauder a mortgage on the west half of section 26 (except church lot) to secure the payment of their promissory note for $7000, due five years after date, with interest at seven and one-half per cent per annum, and on October 1, 1883, said

Annie B. Galford and James T. Galford gave to John D. Gillett a mortgage on the west half of section 26, also the west half of the north-east quarter of section 26, also lot 5 in section 23, township 19, north, range 4, west of the third principal meridian, Logan county, Illinois, and other lands, to secure their two promissory notes for $10,000; that on July 6, 1893, John P. Gillett having become the owner of said $7000 note and mortgage and default having been made in the payment of said three promissory notes, he filed a bill to foreclose said mortgages, and the said Annie B. Galford and her infant son, James Galford, having departed this life in 1884, the said James T. Galford, Anna E. Galford, William V. Galford, Gilbert Haven Galford and Amy A. Galford were made parties defendant to the said bill, and each appeared in person or by guardian *ad litem* in said foreclosure suit, and a decree of foreclosure and sale was entered therein for the sum of $19,-491.08, and said decree remaining unsatisfied on December 29, 1894, the master in chancery sold said premises to Mary B. Nicholson for the sum of $21,191.72 to satisfy said decree and issued to her a certificate of sale therefor, which sale was reported to and approved by the court ordering said sale; that the period of redemption on said sale expired on March 29, 1896; that there were judgments of record remaining unsatisfied against James T. Galford in Logan county which were liens against his interest in said land, aggregating $2845.54, on the 29th day of March, 1896; that on that day James T. Galford was insolvent and unable to redeem from said master's sale, and that said Anna E. Galford, William V. Galford, Gilbert Haven Galford and Amy A. Galford (now Amy A. Eastman) were each without money or property and were unable to redeem from said master's sale; that James T. Galford made every reasonable effort to redeem from said master's sale for and on behalf of himself and his children, but was, for want of funds and by reason of his inability to negotiate a loan

upon said lands,—the fee in part being in his children, two of whom were minors,—unable to redeem from said master's sale, and the period of redemption expired and no redemption was effected from said sale; that, being unable to redeem from said sale, said James T. Galford consummated an arrangement by paying to the holder of said certificate a bonus of $1000 on March 30, 1896, whereby said certificate of sale was assigned to him and he received a master's deed for said premises, the funds to purchase said certificate of sale and clear the title so he could re-mortgage said premises being procured by loans upon said premises and sixty-four acres of land of which he was the owner, as follows: One loan from E. W. Bates for the sum of $19,-000; one from P. W. Harts for the sum of $2000; one from John T. Foster for the sum of $1000, and one from Samuel Mendenhall for $4400, said sums being used to purchase said certificate of sale, and said judgments being satisfied by giving to the holders thereof mortgages aggregating the sum of $2845.54, which were subordinate to the Bates, Harts, Foster and Mendenhall mortgages, all of which mortgages aggregated $29,245.54; that James T. Galford remained in possession of the said premises until April 27, 1899, when, being unable to pay the interest upon the encumbrances on said lands and one foreclosure suit having been commenced against him, he conveyed the said lands to Thomas J. Henneberry, who undertook to sell said lands and from the proceeds derived from said sale to pay the encumbrances thereon; that the lands were sold in four parcels, one to Foster for $4600, one to Foster for $3700, one to Farmer for $550 and one to Mary D. Brown for $20,500, the last sale being of the premises in controversy and all of said sales aggregating the sum of $29,350, which amounts so realized failed to pay and satisfy the Bates, Harts, Foster and Mendenhall mortgages and the accrued interest thereon, and the proceeds of which were used in the purchase of said certificate of sale; that after the purchase

of the portion of the premises conveyed to Mary D. Brown she went into the possession thereof, and has been in the possession thereof since the date of the purchase thereof by her on September 19, 1900, and has expended large sums of money in improving the same.

DAVID H. HARTS, JR., for appellants.

BEACH, HODNETT & TRAPP, for appellee T. J. Henneberry; KING & MILLER, for appellees Mary D. Brown and H. B. Brown.

Mr. JUSTICE HAND delivered the opinion of the court:

The appellants concede that the decree entered in the foreclosure suit wherein the mortgages given by Annie B. Galford and James T. Galford to Kate C. Bauder and John D. Gillett were foreclosed, and the sale to Mary B. Nicholson under said decree, were binding upon them, and that had a master's deed been issued to Mary B. Nicholson, or any person to whom she might have sold and assigned said certificate of sale, other than James T. Galford, the title of the children of Annie B. Galford to the lands covered by said mortgages would have become, as against them, invested in the holder of such master's deed. They contend, however, that upon the master executing a deed to James T. Galford the mortgage indebtedness evidenced by said mortgages held by Kate C. Bauder and John D. Gillett, and the mortgages given by James T. Galford on the said premises to raise funds with which to purchase said certificate of sale and satisfy said judgment liens, became, as against them, immediately satisfied, and James T. Galford took the title to said premises in fee in trust for them, subject to his life estate therein and subject to the one-fifteenth part thereof which he inherited from his deceased son, and that as the deed from Annie B. Galford to James T. Galford, whereby she conveyed said premises to James T. Gal-

ford for life and to her children in fee, had been recorded before the conveyance to Thomas J. Henneberry of said premises and the conveyance by Thomas J. Henneberry to Mary D. Brown, they each took title to said premises with notice of the fact that James T. Galford held fourteen-fifteenths of said premises, subject to his life estate, in trust for the children of said Annie B. Galford, and that the complainants and Amy A. Eastman were the equitable owners of the fourteen-fifteenths part of said premises.

It is clear that under the deed from Annie B. Galford to James T. Galford, James T. Galford took a life estate and the children of Annie B. Galford the fee in the lands which Annie B. Galford had theretofore received· from her father, and that said deed, although not recorded, was binding upon James T. Galford, and if the title of ·Mary D. Brown rested upon said conveyance she would take title to said premises subject to the rights of the children of Annie B. Galford conveyed to them by virtue of said deed. Said deed was not, however, recorded until the Bauder and Gillett mortgages had been given and foreclosed and a sale made by the master to satisfy said decree and a certificate of sale issued to Mary B. Nicholson on said sale, and at the time James T. Galford purchased said certificate of sale the period of redemption under said sale had expired and James T. Galford was insolvent, and the children of Annie B. Galford were without funds or property and were unable to redeem from said sale, and the lands covered by said mortgages were not worth more than the amount of the encumbrances and liens thereon, and James T. Galford made every reasonable effort to redeem from said sale on behalf of himself and children before the time of redemption had expired. The question, therefore, here to be determined is, does the fact that Mary D. Brown deraigns title to said premises through James T. Galford by source of title other than the deed to him from his wife,—that is, by title deraigned through the foreclosure of said mort-

gages,—necessarily cause said Mary D. Brown to take the premises impressed with a trust in favor of the children of Annie B. Galford by reason of the execution of said deed by Annie B. Galford to James T. Galford and the execution to him of a master's deed for said premises, subsequent to the foreclosure of said mortgages?

It is too clear for argument that Annie B. Galford having conveyed said premises to her husband for life and in fee to her children, a court of equity would not suffer James T. Galford fraudulently to so manipulate said title as to defeat the title conveyed to the children of Annie B. Galford and to acquire the title to said premises for his own enjoyment and benefit, and had said James T. Galford paid the Bauder and Gillett mortgages or redeemed from said foreclosure sale he would have been held to have paid his own debt, and the children of Annie B. Galford would have taken the fee to the fourteen-fifteenths part of said premises free and clear of said encumbrance. (*Schroeder v. Bozarth,* 224 Ill. 310.) James T. Galford, however, did not pay said mortgage or redeem from said sale, but, on the contrary, as we think the evidence shows, in the utmost good faith, after the period of redemption had expired, arranged to have the certificate of sale issued in the foreclosure sale assigned to him, and then took out a deed in his own name and borrowed upon the land sufficient funds to pay the amount agreed to be paid for said certificate of sale and to satisfy the liens upon said premises, and thereby, if possible, save said premises for the benefit of himself and the children of Annie B. Galford, but that his expectations failed and he subsequently lost the land, and that the fact that he postponed for a time the loss of said lands to himself and said children in no way injured said children, as, had he not arranged to take title to said lands by the assignment to him of said certificate of sale in the manner in which he did, a deed would have issued to Mary B. Nicholson under said foreclosure sale, and he and said children

would have been fully divested of all title to said premises immediately after the expiration of the equity of redemption on March 29, 1896. There is, therefore, no evidence of any fraud or the violation of any confidential trust relation existing between James T. Galford and the children of Annie B. Galford. If, therefore, the title to said premises vested in James T. Galford in trust for the benefit of the children of Annie B. Galford at the time he received the title thereto by virtue of the master's deed, and he was thereafter unable to convey the same to Thomas J. Henneberry freed from said trust, such trust must be held to arise solely from the fact that Annie B. Galford had theretofore executed to him said deed conveying to him said premises for life and to her children in fee, and not by virtue of the fraudulent breach of any confidential relation existing between himself and the children of Annie B. Galford.

The rule is well settled that courts of equity, no more than courts of law, sit for the purpose of enforcing moral obligations or correcting unconscientious acts which are followed by no loss or damage,—that is, that fraud and injury must both concur to furnish a ground for judicial action. In *Campbell* v. *Benjamin,* 69 Ill. 244, a mortgage was made by Elizabeth Scriven upon her real estate to secure the debt of her husband, Charles H. Scriven. Subsequent to her death the mortgage was foreclosed and bought by one Wait and a deed made to him by the master. On the same day Wait conveyed the premises to Charles H. Scriven, and both deeds were recorded upon the same day. Subsequently Charles H. Scriven executed a trust deed to secure his note for $6000 upon the premises and then conveyed the premises subject to the trust deed, and in a subsequent suit to foreclose said trust deed it was held that had the sale been attacked while the title was held by Charles H. Scriven it might have been set aside, but that as against his grantee, who had no notice that the land was bought in by Wait for Scriven except that afforded by the record of

the deeds, the sale should be sustained. And in *Kyle* v. *Wills,* 166 Ill. 501, a widow purchased land at a master's sale upon the foreclosure of a mortgage given by her husband to secure the payment of money which she had inherited from her father and which she had loaned her husband. The sale was afterwards attacked by her children on the ground that a fiduciary relation existed between the widow and her children and that the land in her hands was impressed with a resulting trust. The sale was, however, sustained. In *Chorpenning's Appeal,* 32 Pa. St. 315, (72 Am. Dec. 789,) a guardian purchased the property of his ward at a judicial sale. The evidence showed that the guardian had no funds in his hands with which to pay off the judgment or purchase the lands for his ward, and the sale was sustained. And in *Kullman* v. *Cox,* 167 N. Y. 411, (53 L. R. A. 884,) the wife, her husband joining therein, executed a mortgage on her land. After the death of the wife the mortgage was foreclosed. It appeared that the husband or the wife's children had nothing with which to pay the mortgage or interest. The holder of the debt became the purchaser, and after he acquired a deed conveyed the property to the husband, and the transfer to the husband was sustained.

The interest of the children of Annie B. Galford in said premises, if any, at the time James T. Galford acquired title to the certificate of sale and obtained a master's deed, was without value to them, for the reasons that their equity of redemption had expired, that they had no means with which to redeem from said sale and that the land was encumbered for all it was then worth, and Mary D. Brown having purchased said land in good faith and having made lasting and valuable improvements thereon, equity and good conscience and fair dealing require that she should be protected in the enjoyment and possession of said land.

The decree of the circuit court will be affirmed.

*Decree affirmed.*